## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARWIN BROWN, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Case No. 00-CV-91-TCK-SAJ |
| | ) | |
| MARTY SIRMONS, Warden, | ) | |
| OKLAHOMA STATE PENITENTIARY, | ) | |
| | ) | |

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus (Dkt. #12) filed

by Oklahoma death row inmate Darwin Demond Brown, pursuant to 28 U.S.C. § 2254. Petitioner,

who appears through counsel, challenges his conviction and sentencing in Tulsa County District

Court Case No. CF-95-1024.  Respondent Gary Gibson filed a response to the Petition denying its

allegations (Dkt. #14), and Petitioner filed a Reply (Dkt. #17). For the reasons discussed below, the

Court finds the Petition should be denied.

As a preliminary matter the Court notes that Marty Sirmons is now the Warden at Oklahoma

State Penitentiary. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Court finds

that Marty Sirmons is the proper substituted Respondent and the Court Clerk shall be directed to

note such substitution on the record.

The Court has reviewed: (1) the Petition for Writ of Habeas Corpus, the Response to the

Petition, and the Reply to the Response; (2) transcripts of the motion hearing held on October 30,

1996, motion hearing held on January 27, 1997, motion hearing held on January 30, 1997, motion

hearing held on February 3, 1997, jury pool proceedings held on February 3, 1997 in front of Brown

jury pool only, *voir dire* of Brown jury on February 6-7, 1997 (three volumes), motion hearing held

on February 10, 1997, and hearing held in chambers on February 11, 1997, after opening statement

in Wilson case; (3) transcript of the first stage of jury trial proceedings, held February 11-14, 1997

(five volumes); (4) transcript of the second stage of the jury trial proceedings held on February

18-20, 1997 (five volumes); (5) all documents and exhibits (photographs of certain items of physical

evidence submitted in lieu of actual items) admitted in jury trial proceedings, including one audio

tape of Darwin Brown's statement to police and two video tape exhibits; (6) transcript of the

sentencing proceedings held on April 9, 1997; (7) Original Record (O.R.) in Tulsa County Case No.

CF-95-1024, Volumes I, II and III; and (8) all other records before the Oklahoma Court of Criminal

Appeals which were transmitted to this Court and certified by the parties.


## BACKGROUND

### I.   FACTUAL HISTORY

Petitioner and three other co-defendants were convicted for the February, 1995, brutal killing

of QuikTrip employee, Richard K. Yost.  Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as

found by the state court are presumed correct. In Petitioner's state court direct appeal, the Oklahoma

Court of Criminal Appeals adopted the following facts.[1]

> Brown's codefendant Michael Wilson was employed at the QuikTrip convenience
> store located at 215 North Garnett Road in Tulsa, Oklahoma, where Richard Yost
> also worked. Brown and the codefendants came into the store during the early
> morning hours of February 26 and waited for the most opportune time to accost Yost.
> The QuikTrip surveillance camera captured the events as they unfolded. The video
> of the events is quite telling.
> Yost was cleaning the windows on the coolers with all of the defendants surrounding
> him.  As Yost was walking near a passage-way to the back room, all four defendants

---

[1] Additional facts, apparent from the record, may be presented throughout this opinion as
they become pertinent to this Court's analysis.

attacked him and dragged him to the back room.  One of the defendants, Billy Alverson, came back out and picked up some items that were knocked from the shelves. He also kept watch for customers.  A few moments later, Alverson and Richard Harjo walked out the front door of the store.  While they were going out, Yost was yelling and screaming for help, possibly thinking that a customer had entered the store.  Alverson and Harjo re-entered the store with Harjo carrying a black aluminum baseball bat.  He carried the bat to where Yost had been taken.  The surveillance camera picked up the sounds of the bat striking Yost. Circumstantial evidence showed that the baseball bat struck the handcuffs on Yost's wrists which Yost was holding above his head to ward off the blows.  As the blows were being struck, Wilson walked from the back room, checked his hands, put on a QuikTrip jacket, got behind the counter and tried to move the safe.  While Wilson was behind the counter, several customers came in.  Wilson greeted them with a friendly greeting, sold them merchandise, then said "thank you, come again" or "have a nice day."

All this time Wilson continued to try and pull the safe from underneath the counter. He took money from the cash drawer and pulled money out of the currency change machine.  At some point after this, Wilson left the counter area and the video went blank as the video was taken from the recorder.  Brown was never seen exiting the back room between the times Yost was dragged into the room until the video recorder was stopped.  The defendants then loaded two safes into Wilson's car using a dolly from QuikTrip.

Yost's body was discovered by customer Larry Wiseman at about 6:00 a.m. Yost was laying on the floor in a pool of blood, milk and beer. Yost's ankles were taped together with duct tape. One handcuff was found near Yost's body. The other cuff was missing from the scene. Detectives learned that Wilson was at the store between the hours of 4:00 a.m. and 6:00 a.m.

Wilson failed to show up for work at the scheduled time of 3:00 p.m. on the same day.  Officer Allen set up surveillance on Wilson's house, and at about 4:00 p.m. he spotted Wilson get into a gray vehicle.  The vehicle was stopped.  All four defendants were taken into custody.  A large number of five dollar bills was recovered from Harjo at the site of the stop.  Later, at the police station, money was recovered from all of the defendants except Wilson.

Officers searched Alverson's place of abode where they discovered the drop safe, the dolly, QuikTrip glass cleaner, money tubes and the store surveillance videotape.  A search was conducted of Wilson's house but nothing of value was discovered.  The next day Wilson's mother called Officer Makinson to come to her house.  Once there, the detectives found several items of evidence on the front porch, including the baseball bat, a bloody QuikTrip jacket with Yost's name on it, Wilson's Nike jacket matching the one worn in the store video and the other cuff of the set of handcuffs.

3

Brown v. Oklahoma, 989 P.2d 913, 919-20 (Okla. Crim. App. 1998).

## II.   PROCEDURAL HISTORY

Petitioner, Darwin Edmond Brown, was convicted following a jury trial in the District Court of Tulsa County, Oklahoma, Case No. CF-95-1024, of Murder in the First Degree (malice aforethought and felony murder) and Robbery With a Dangerous Weapon. His trial was held jointly with co-defendant Michael Wilson's trial, in front of separate juries. Petitioner was represented at trial by attorney Allen Smallwood. At the conclusion of the sentencing stage, Petitioner's jury found three aggravating circumstances: (1)  the murder was especially heinous, atrocious or cruel; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) Brown would constitute a continuing threat to society. Petitioner was, on April 9, 1997, sentenced to death on the murder conviction and sentenced to life imprisonment on the robbery conviction.

Petitioner filed a direct appeal of his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA") in case No. F-97-493. The OCCA rejected Petitioner's alleged errors by affirming the conviction and sentence on the murder count. The judgment and sentence for robbery with a dangerous weapon was reversed and remanded to the district court for dismissal. The OCCA denied a rehearing on February 22, 1999. Brown, 989 P.2d at 913. Petitioner did not seek certiorari review from the United States Supreme Court.

Petitioner sought post-conviction relief from the Oklahoma Court of Criminal Appeals in case No. PC-98-1251, but all requested relief was denied on November 9, 1999, in an unpublished opinion. (Dkt. #12, Exh. B) (Opinion Denying Post-Conviction Relief).

Petitioner initiated the instant habeas corpus proceedings on February 2, 2000. He claims

constitutional violations arising from the trial court's unauthorized use of dual juries, a warrantless arrest without probable cause, the trial court's refusal to instruct on second degree murder, errors in the trial court's dismissal of certain veniremen for cause, prosecutorial misconduct, insufficient evidence to support the heinous, atrocious and cruel aggravator, unconstitutional application of continuing threat and "avoid arrest" aggravators, improper victim impact evidence, and cumulative errors.

## GENERAL CONSIDERATIONS

### I.   EXHAUSTION

Federal habeas corpus relief is generally not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b). Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994). See also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the court must first consider exhaustion. Harris, 15 F.3d at 1554. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 731 (1991). The Supreme Court has long held that a federal habeas petitioner's claims should be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims. Id.  citing Ex parte Royall, 117 U.S. 241 (1886); Rose v. Lundy, 455 U.S. 509 (1982); Castille v. Peoples, 489 U.S. 346 (1989); and 28 U.S.C. § 2254(b) (codifying the rule).

The exhaustion doctrine is designed to give the state courts a full and fair opportunity to

5

resolve federal constitutional claims before those claims are presented to the federal courts. Therefore, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State courts must have the rightful opportunity to adjudicate federal rights. The "[p]rinciples of exhaustion are premised upon recognition by Congress and the Court that state judiciaries have the duty and competence to vindicate rights secured by the Constitution in state criminal proceedings." Williams v. Taylor, 529 U.S. 420, 436-37 (2000). This Court will address the exhaustion issue as it arises in each claim.

## II.    PROCEDURAL BAR

The Supreme Court has also considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.  Coleman, 501 U.S. at 750. See also Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir. 1995); Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768 (10th Cir. 1998).  If the state court finding is applied "evenhandedly to all similar claims," it will be considered "adequate."  Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good

6

cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433 U.S. 72 (1977).

## III.    STANDARD OF REVIEW - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") specifically delineates the circumstances under which a federal court may grant habeas relief. Title 28, Section 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d), this Court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of Petitioner's case. Terry Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Petitioner's habeas proceedings in the instant matter commenced well after the effective date of AEDPA. Although the crime for which Petitioner was convicted predates the law's enactment, the provisions of the Act govern pursuant to Lindh v. Murphy, 521 U.S. 320 (1997). Accordingly, this Court finds that the AEDPA is applicable and will apply it herein.

## PETITIONER'S CLAIMS FOR RELIEF

### I.    Dual Juries

Petitioner alleges in his first claim for relief that the use of dual juries in his trial violated his Eighth and Fourteenth Amendment rights because it was unauthorized under state law and constituted structural error in the trial process itself. This claim has been exhausted for federal habeas review purposes.

During Petitioner's trial, "dual" juries were empaneled to try Petitioner and his co-defendant, Michael Wilson, simultaneously. Relying heavily on language from a Ninth Circuit panel decision[2] which was subsequently reversed, Petitioner asserts that because the use of dual juries is not specifically authorized under Oklahoma law it was a violation of his due process rights and constituted a structural error in his trial proceedings. (Dkt. #12 at 25-36). Additionally, Petitioner claims that the use of a dual jury system prejudiced his defense because it stifled cross-examination and created a conflict of interest for his attorney. (Dkt. #12 at 36). Respondent asserts that the use

---

[2] Lambright v. Stewart, 167 F.3d 477 (9th Cir. 1999), *reversed*, 191 F.3d 1181 (9th Cir. 1999) (*en banc*). Petitioner recognizes that the Lambright panel decision was reversed, but urges this Court to adopt the analysis of the panel and of the dissent in the *en banc* Lambright opinion. See Dkt. #12 at 33.

of dual juries is not structural error, and Petitioner has failed to demonstrate any prejudice from use of the dual juries at his trial. (Dkt. #14 at 19).

### A. Use of Dual Jury is not structural error

In rejecting this claim on direct appeal, the OCCA found the dual jury process used in Petitioner's trial was constitutional.[3]

> We now have before us Brown's claim that the dual jury system is not authorized under Oklahoma law and the procedure violates a defendant's constitutional rights. We previously ruled, in an "Extraordinary Writ" action by Brown, that the trial court has the discretion to implement a dual jury procedure because Oklahoma law does not prohibit such a procedure. Under the theory of collateral estoppel (issue preclusion) "once a court has decided an issue of fact or law necessary to its judgment, that issue may not be re-litigated between the same parties or their privies in a suit on a different cause of action." Wilson v. Kane, 1993 OK 65, n.23, 852 P.2d 717, 727, n.23. Therefore, the principle of collateral estoppel prevents Brown from raising the issue of whether the dual jury procedure is authorized in Oklahoma. However, Brown's arguments regarding the dual jury procedure's effect on his rights are properly before us.
>
> We first note that jurisdictions which have approved the use of a dual jury system or a multiple jury process require a defendant to show actual prejudice from the use of this novel approach to multiple defendant trials. We find this approach comports with Oklahoma law. The use of the multiple jury process is constitutional, and a conviction had with the use of the multiple jury system will be upheld absent a showing of specific prejudice.

Brown, 989 P.2d at 921 (footnotes omitted). Petitioner argues that the OCCA erred because the unauthorized use of a dual jury procedure violates constitutional due process, constitutes structural error, and requires reversal without a showing of specific prejudice. (Dkt. #12 at 25).

A constitutional error is either structural or it is not. Neder v. U.S., 527 U.S. 1, 14 (1999).

---

[3] The OCCA also ruled in an "Extraordinary Writ" action initiated by Petitioner and two of his co-defendants prior to the commencement of his trial that Oklahoma law did not preclude the trial court from exercising discretion to impanel dual juries. Harjo, et al. v. Turnbull, Order Denying Petitions for Extraordinary Relief, Nos. P-96-1266, P-96-1278 (Okla. Crim. App. January 14, 1997) (not for publication). See O.R. Vol. II at 267-74.

However, it is necessary to find constitutional error before categorizing it as structural or not. Federal courts that have considered challenges to the use of dual juries have, without exception, concluded that the procedure is not *per se* violative of constitutional protections.   See e.g., Lambright v. Stewart, 191 F.3d 1181, 1186 (9th Cir. 1999) (finding no violation of due process or any other trial

right in the use of dual juries in a capital case); Smith v. DeRobertis, 758 F.2d 1151 (7th Cir. 1985), cert. denied, 474 U.S. 838 (1985) (holding that the use of dual juries is not a *per se* violation of due process and that a criminal defendant must show some specific, undue prejudice to be entitled to relief); Padilla v. Dorsey, 221 F.3d 1352, 2000 WL 1089502 (10th Cir. 2000) (unpublished table decision), cert. denied, 531 U.S. 1116 (2001) (denying a certificate of appealability and finding that the habeas petitioner had failed to make a substantial showing of the denial of a constitutional right on his claims, including his claim that he was prejudiced as a result of dual juries in a single trial). See also United States v. Lewis, 716 F.2d 16, 19 (D.C. Cir. 1983); United States v. Hayes, 676 F.2d 1359, 1366 (11th Cir. 1982).   Furthermore, the partial or total severance of co-defendants' trials lies within the discretion of the trial court. See Fowler v. Ward, 200 F.3d 1302, 1308 (10th Cir. 2000), *overruling on other grounds recognized*, Moore v. Marr, 254 F.3d 1235, 1240 (10th Cir. 2001).

The trial court did not abuse its discretion in this case by empaneling dual juries, and the OCCA' s decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). In arguing that the dual jury procedure is a structural error rather than a harmless error, Petitioner presumes that the procedure is a constitutional error and seeks to categorize it as structural.  This Court finds that, although use of the dual jury procedure may be innovative and novel, utilization of the procedure is not

constitutional error, structural or otherwise. Petitioner has failed to demonstrate that the use of dual

juries is constitutionally impermissible and he shall not be entitled to habeas relief on this issue.

### B. Prejudice

Having found that the procedure to seat two juries and simultaneously try both Petitioner and

one of his co-defendants is not a *per se* violation of Petitioner's constitutional rights, the Court now

turns to Petitioner's claims that the dual jury process prejudiced the presentation of his case.

Petitioner asserts that the implementation of the dual jury mechanism prejudiced his defense by

"stifling cross examination and creating a conflict of interest in [his] counsel's representation" at

trial. (Dkt. #12 at 36). Respondent notes that Petitioner points to no specific instances during trial

when Petitioner's attorney's cross examination techniques were stifled. Nor has Petitioner made any

specific references to support the claim that his attorney was hampered by a perceived conflict of

interest.

The OCCA found that Petitioner's claims of prejudice did not warrant relief. Concerning the

issue of cross-examination, the OCCA found that Brown was protected from prejudice:

> Brown claims that the dual jury system violates his right to free,
> unfettered cross-examination because it has a chilling effect on
> effective cross-examination. He claims that this problem was
> magnified when the trial court instructed defense counsel that it is the
> responsibility of attorneys for the State and defense to advise the
> Court of testimony which would make it necessary to have the juries
> separated. The trial court told the attorneys that they would have to
> work a little harder and that the trial court did not anticipate that any
> of the attorneys would purposely taint the proceedings in front of the
> jury.

See Brown, 989 P.2d at 921.

Addressing Petitioner's conflict of interest concerns, the OCCA stated:

11

> Brown claims that the dual jury system creates a conflict of interest for defense counsel because he must not only represent his client, but must also strive to protect the codefendant during his presentation of witnesses or cross-examination when both juries are present. Brown cites Holloway v. Arkansas, 435 U.S. 475, 488-91, 98 S.Ct. 1173, 1180-82, 55 L.Ed.2d 426 (1978), for the proposition that when a conflict of interest is present, prejudice is presumed.
>
> In Holloway, counsel was required to represent three different codefendants who had conflicting interests. . .  .   The Court in Holloway determined that when trial counsel, as an officer of the court, claims that a possible conflict of interest will occur because of joint representation, the failure to take adequate steps to resolve the conflict constitutes reversible error. Holloway, 435 U.S. at 486-87, 98 S.Ct. at 1179-80.
>
> In this case, each defendant had separate counsel. Therefore, counsel was not faced with the problems occurring in Holloway. The only obligation Brown's counsel had to the codefendant was to inform the judge when his questions would lead to answers which would not be admissible in the trial of the codefendant. If objectionable questions and answers were presented, it was the responsibility of the codefendant's attorney to raise an objection.

Id. at 922. The OCCA noted that Petitioner did not identify any specific instances where his counsel

was acting under an actual conflict of interest, and found no error. Id.

The record reflects that the trial court judge entered a Final Amended Trial Schedule

establishing the dual jury procedure to be used in Petitioner's conjoint trial with his co-defendant.

See O.R. Vol. III at 497-501.  The record also demonstrates that the trial judge was aware of the

potential for error inherent in the procedure and meticulously explained the process to Petitioner's

jury, instructing them that:

> There are a few things that I need to explain to the 14 of you before we leave. And they're important matters, so I know that you're tired, but I ask you to pay close attention, please. It has to do with the type of trial that is going to be conducted, the multiple jury process that all of you will be a part of, beginning on Monday.

12

It is the belief of this Court that conducting these jury trials in this manner, the multiple jury process where we try these trials two at a time with two different defendants and two different juries, is an efficient way for us to take care of this case, that it is efficient, it conserves judicial resources, and it also lessens the adverse impact in this case on the family of the victim and the family of the defendants that are involved in this case.

. . .

It's important for you to know that during much of this jury trial or these two jury trials, both of the defendants and their attorneys will be present in the courtroom. It is also important that you know that you are not to draw any inference from the fact that both defendants are present and seated at the same counsel table.

. . .

It's also important for you to know that when testimony is being put on in this case, you will hear evidence about Mr. Wilson, who is the other defendant. I would represent to you that if we did these cases one at a time, because there are four different defendants charged in this -- these two charges, in this particular incident, that you will not -- that you would, if we tried these one at a time, not only hear evidence about Mr. Wilson, but you would hear evidence about Mr. Harjo and Mr. Alverson also. So you understand that you'll hear evidence about Mr. Brown, about Mr. Wilson, about Mr. Alverson, and about Mr. Harjo.  And it's important that when you're listening to that evidence, that you listen to the evidence as a whole, but also that you remember what evidence is applicable to Mr. Brown.

. . .

It's also important for you to know, as I probably mentioned to you on Monday, that there will be times when one jury, for instance, the 14 of you will be present in the courtroom, and Mr. Wilson's jury will be excused from the courtroom, and you will hear evidence at that time that is only applicable to Mr. Brown. . . . [B]ut there will be times when the Wilson jury will actually be in this courtroom and all of you will be excused from the courtroom.

. . .

As a matter of law, I must instruct you that at times when you are outside of the courtroom, you are not to speculate or try and make any guess as to what is going on in the courtroom when Mr. Wilson's jury, Mr. Wilson and his attorneys are present.

. . .

Again, you must listen to all the testimony that is submitted to you and all the exhibits that are submitted to you while this Court is in session, but it's important that you sort through that evidence, and

you remember and use in your deliberations only the evidence that is
applicable to Mr. Brown.

(Tr. Trans. Vol. 3 of *voir dire* proceedings of Defendant Brown at 691-97). The OCCA concluded

that Brown was sheltered from prejudice because the trial court's lengthy instructions to the jury

adequately informed them of their duty in the event they were removed from the courtroom while

evidence was presented to the other jury. Brown, 989 P.2d at 921-22.

In the petition filed in this case, Petitioner makes only a general assertion that the cross-

examination of prosecution witnesses by his counsel was tempered and a general allegation of

conflict of interest. Petitioner offers no specific citations to testimony or the record supporting his

allegations.

After reviewing the entire trial transcript, the Court finds Petitioner's prejudice challenge

based on the dual jury procedure utilized at his trial is without merit. The Court has found no

evidence of confusion or impropriety in the dual jury proceedings.  Petitioner has failed to

demonstrate a specific and undue prejudice to his defense from the procedure. See Smith v.

DeRobertis, 758 F.2d 1151, 1152 (7th Cir. 1985).  In light of the evidence of guilt presented by the

prosecution, the Court also finds Petitioner was not prejudiced by any perceived "chilling effect"

on cross-examination of the State's witnesses. Additionally, the implementation of the dual jury

procedure did not create a conflict of interest for his attorney such as the one described in Holloway

v. Arkansas, 435 U.S. 475 (1978).  In summary, after reviewing the record from Petitioner's trial,

the Court concludes that Petitioner was not prejudiced by the dual jury procedure utilized at his trial.

Accordingly, the Court finds Petitioner has failed to demonstrate how the OCCA's decision was

contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254

(d)(1). Petitioner is not entitled to habeas relief on this issue.

14

## II.      Admissibility of evidence

In his second claim for relief, Petitioner argues that his arrest on February 26, 1995, was illegal and that the introduction of evidence obtained as the result of his arrest violated the Fourth, Eighth and Fourteenth Amendments.  The claim is exhausted because it was raised in Petitioner's state court proceedings. In response to the petition, Respondent argues that Petitioner's request for habeas relief on this issue is foreclosed by Stone v. Powell, 428 U.S. 465 (1976). Petitioner replies that Stone does not bar review of his claim by this Court.

### A. Fourth Amendment

As an initial matter, the Court notes that Petitioner seeks a ruling from this Court that Stone is not applicable to capital cases. (Dkt. #17 at 5).  Although Stone may not have been a capital case itself, the Tenth Circuit has applied Stone to capital cases. See, e.g. ,Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999); Cannon v. Gibson, 259 F.3d 1253, 1261-64 (10th Cir. 2001). Petitioner's request for a ruling that Stone does not apply in capital cases shall be denied.

Additionally, the Court need not belabor its discussion of the merits of Petitioner's request for  habeas corpus relief on this issue because the state courts granted Petitioner a full and fair opportunity to litigate his claim premised on the Fourth Amendment.  In Stone, 428 U.S. at 494, the Supreme Court stated that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial.  The Tenth Circuit has reiterated that a federal habeas corpus court need not address a Fourth Amendment question as long as the state court has given the petitioner a full and fair opportunity for a hearing on the issue. Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999); Miranda v. Cooper, 967

15

F.2d 392, 400-01 (10th Cir. 1992); Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978).  Thus, the threshold question for this Court is whether Petitioner was provided with an opportunity for full and fair litigation of his Fourth Amendment claim. Id. at 1164. If the state court failed to "extend an opportunity for full and fair consideration of Fourth Amendment claims" this Court must conduct an evidentiary hearing, unless the facts are not in dispute. Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992).[4]

In Gamble, the Tenth Circuit noted that "[a]lthough Stone announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." Gamble, 583 F.2d at 1164. As a result, the Tenth Circuit constructed a definition for that phrase:

> "Opportunity for full and fair consideration" includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by Townsend.[5] Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

Gamble, 583 F.2d at 1165. The definition was further explained the next year in Sanders v. Oliver, 611 F.2d 804 (10th Cir. 1979). In Sanders, the Tenth Circuit held that, "'Opportunity' includes

---

[4] Although Miranda is a pre-AEDPA case, this Court notes that the Tenth Circuit Court of Appeals has continued to apply it and its de novo review to habeas cases presenting Stone Fourth Amendment claims after the enactment of the AEDPA. See Bivens v. Hargett, 166 F.3d 1220, 1999 WL 7729 (10th Cir. 1999) (unpublished disposition cited pursuant to Fed. R. App. P. Rule 36.3).

[5] Townsend v. Sain, 372 U.S. 293 (1963) (overruled on other grounds).

16

procedural opportunity to raise a claim, and it includes a full and fair hearing." Id. at 808.

In this case, the record demonstrates that Petitioner was afforded the opportunity in the state courts to fully, fairly, and adequately challenge the admissibility of the evidence in question. On February 21, 1996, Petitioner filed a motion to suppress confession as fruit of an unlawful arrest. (O.R. Vol. I at 122). The trial court heard arguments on Petitioner's motion during pretrial hearing proceedings (see Trans. of Hr'g held October 30, 1996 at 92-163). After hearing the evidence and considering counsel's arguments, the trial court judge denied the motion. (Id. at 162-63). Petitioner then raised his Fourth Amendment claims on direct appeal (see Brief of Appellant in OCCA Case No. F-97-493 at 7-29). The OCCA throughly considered the facts underlying Petitioner's claim, determined that there was constitutional error, but found that the error was harmless. Brown, 989 P.2d at 934-37.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. As a result, this Court is precluded from considering the Fourth Amendment issues raised in Petitioner's application for a writ of habeas corpus based on Stone v. Powell, 428 U.S. 465, 494 (1976); see also Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978) (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards). This Court is convinced that the state provided, and Petitioner received, an opportunity to litigate his Fourth Amendment claims fully and fairly. For that reason, Petitioner is not entitled to habeas corpus relief on his second claim insofar as he argues a violation of his constitutional rights under the Fourth Amendment.

*B. Eighth and Fourteenth Amendments*[6]

Petitioner's summary statement preceding the substantive argument supporting his second claim states that the "introduction of evidence obtained as the result of Brown's warrantless arrest made without probable cause violated the Fourth, Eighth and Fourteenth Amendments to the United States Constitution." Petitioner, however, fails to present any factual or legal argument to support the vague and conclusory reference to violations of the Eighth and Fourteenth Amendments in this second ground. Neither are implicated here as his claims of improper admission of evidence as a result of his arrest are properly considered under the Fourth Amendment. The Court will not assume the role of advocate, and finds that Petitioner has not demonstrated that he is entitled to habeas corpus relief on this portion of his second claim.

## III.   Jury Instructions on Lesser Included Offenses

Petitioner next claims that the trial court committed constitutional error in denying Brown's requested jury instructions on murder in the second degree by imminently dangerous conduct (O.R. Vol. III at 394) and murder in the second degree by felony murder (O.R. Vol. III at 395-96). Petitioner contends that his Eighth and Fourteenth Amendment rights were violated as a result of the error.

Respondent asserts Petitioner has only exhausted the claim pertaining to the failure to instruct on second degree felony murder.  Respondent alleges that the issue relating to a jury instruction on second degree murder by imminently dangerous conduct was never presented to the state court for review and is, therefore, unexhausted.  However, because this issue would be barred

---

[6] The Eighth Amendment, applicable to the states via the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments against persons convicted of crimes. <u>Clemmons v. Bohannon</u>, 956 F.2d 1523, 1525 (10th Cir. 1992).

if Petitioner tried to bring a second post-conviction proceeding, Respondent submits Petitioner is now procedurally barred from raising such issue in state court.  Therefore, Respondent urges this Court to find the claim relating to an instruction on second degree murder by imminently dangerous conduct procedurally barred from federal habeas review. Petitioner replies that this issue was presented to the OCCA on direct appeal in his Proposition IX, but the OCCA failed to address the claim in its ruling.

### A. Exhaustion

Respondent asserts that the portion of Petitioner's Claim Three relating to the failure of the trial court to give an instruction on second degree murder by imminently dangerous conduct was not raised in state court below and is unexhausted. After reviewing the petition, response, reply, and the record provided by Petitioner and Respondent, the Court does not agree with Respondent's position. On direct appeal, Petitioner claimed that the trial court committed reversible error in refusing his request that the jury be instructed on the offense of second degree murder. See Proposition IX, Brief of Appellant, OCCA Case No. F-97-493 at 58-60. In the first sentence of Proposition IX of his direct appeal brief, Petitioner referred to all requested second degree murder instructions found at O.R. 394-398. Id. at 58. The second degree murder instruction found at O.R. 394 specifically outlined the elements of murder in the second degree by imminently dangerous conduct. However, Petitioner's substantive argument in Proposition IX of his state appellate brief focused primarily on the second degree felony murder instructions. The OCCA addressed only the second degree felony murder instructions in rejecting Petitioner's Proposition IX on the merits, stating:

> In proposition nine, Brown argues that the trial court erred in refusing to instruct on the lesser included offense of second degree felony murder. Brown claims that there was evidence supporting the view that the murders occurred during the course of robbery by force and fear, a lesser included offense of robbery with a dangerous

weapon. We do not agree.

> "Robbery, the predicate felony in second degree felony murder, cannot be accomplished with a dangerous weapon.  If it is, the offenses are Robbery with a Dangerous Weapon and first degree felony murder." <u>Foster v. State</u>, 1986 OK CR 19, ¶31, 714 P.2d 1031, 1039.  In this case, the evidence clearly showed that the victim was beaten to death with a baseball bat, a dangerous weapon which was used to complete the robbery.  Where there is no evidence to support a lesser included offense the court has no right to ask the jury to consider the issue. <u>Boyd v. State</u>, 1992 OK CR 40, ¶9, 839 P.2d 1363, 1367-68. There was no evidence other than the evidence that a dangerous weapon was used to commit the robbery. Accordingly, we find no error.

<u>Brown</u>, 989 P.2d at 930. Despite the failure of the OCCA to address the trial court's denial of a requested second degree murder by imminently dangerous conduct instruction, this Court finds that the issue was fairly presented to the state court for review and the exhaustion requirement is satisfied. Petitioner's allegations in Proposition IX were sufficient to fairly present the substance of his claim to the state court. <u>See</u> <u>e.g.</u> <u>Engberg v. Wyoming</u>, 265 F.3d 1109, 1114-16 (10th Cir. 2001) (habeas petitioner had exhausted his claim when he had presented "essential substance" of the issue in state court claim). Fair presentation of a claim to the state courts means that the substance of the claim must be raised there.[7]

The state appellate court was presented, but did not analyze or articulate its reasons for denying Petitioner's claim insofar as it concerns the second degree murder by imminently dangerous conduct instruction. Therefore, this Court will conduct an independent review of the record and applicable federal law to ascertain whether the state court's denial of relief on this issue was "contrary to, or involved an unreasonable application of, clearly established federal law" under

---

[7] Conversely, a state prisoner "does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief (or a similar document)" to find material that will alert it to the presence of such a claim." <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).

AEDPA. <u>See</u> 28 U.S.C. § 2254(d); <u>Aycox v. Little</u>, 196 F.3d 1174, 1177-78 (10th Cir. 1999)

(OCCA's decision still entitled to deference under § 2254(d) even though federal court must conduct

an independent review and articulate an appropriate rationale for OCCA's decision).

*B. Lack of Second Degree Felony Murder Instruction*

Jury instructions on lesser included offenses need only be given where evidence exists to

support such instruction. <u>See</u> <u>Stouffer v. Reynolds</u>, 168 F.3d 1155, 1170 (10th Cir. 1999); <u>Bryson</u>

<u>v. State</u>, 876 P.2d 240, 255 (Okla. Crim. App. 1994). In <u>Duvall v. Reynolds</u>, the Tenth Circuit

examined this same issue:

> In <u>Beck v. Alabama</u>, 447 U.S. 625, 638, 100 S. Ct. 2382, 2390, 65 L. Ed. 3d 392
> (1980), the Supreme Court held that in a capital case, due process requires that a jury
> be given the option of convicting a defendant on a lesser included noncapital offense
> if the evidence would support conviction on that offense.
>
> . . .
>
> A state, however, is not required to "create a noncapital murder offense for every set
> of facts under which murder may be committed." <u>Hatch v. State</u>, 58 F.3d 1447, 1454
> (10th Cir. 1995). A trial court must instruct the jury on a noncapital offense as
> defined by state law only if the evidence would have supported such a verdict. <u>Beck</u>,
> 447 U.S. at 627, 100 S. Ct. at 2384.

<u>Duvall v. Reynolds</u>, 139 F.3d 768, 786 (10th Cir. 1998).

As previously noted, the state appellate court failed to find the evidence at Petitioner's trial

warranted a second degree felony murder instruction because "robbery, the predicate felony in second

degree felony murder, cannot be accomplished with a dangerous weapon." <u>Brown</u>, 989 P.2d at 930.

The Tenth Circuit has confirmed that, "[O]nce the state has established that a defendant used a

dangerous weapon in the course of a robbery that results in death, the offense of second degree

murder is no longer an option under Oklahoma law." <u>Fowler v. Ward</u>, 200 F.3d 1302, 1309 (10th Cir.

2000) (citing <u>Hatch v. Oklahoma</u>, 58 F.3d 1447, 1454 (10th Cir. 1995)), *partial overruling on other*

*grounds recognized in* <u>Moore v. Marr</u>, 254 F.3d 1235 (10th Cir. 2001). Petitioner argues that the robbery was committed through force and fear, rather than with a dangerous weapon, because the dangerous weapon, a baseball bat, was not used "to effectuate the robbery." (Dkt. #12 at 53). While the Court agrees with Petitioner that the evidence shows the baseball bat was not used initially to subdue the victim, the Court cannot agree with Petitioner's argument that the bat was not used in the course of the robbery. Petitioner strains to separate the robbery from the murder by saying the robbery was committed through force and fear, but the murder was committed with a dangerous weapon. As the OCCA noted, "[T]he evidence clearly showed that the victim was beaten to death with a baseball bat, a dangerous weapon which was used to complete the robbery." <u>Brown</u>, 989 P.2d at 930. The facts support the OCCA's conclusion that the victim was murdered during the course of a robbery with a dangerous weapon at the QuikTrip. The Court must afford this factual finding a presumption of correctness under 28 U.S.C. § 2254(e)(1), which requires that a state court's factual findings can only be rebutted by "clear and convincing evidence." Petitioner has failed to meet this burden.

Accordingly, the trial court's refusal to give the instruction does not warrant habeas relief. This Court cannot find that the state appellate court's decision, insofar as it addressed the second degree felony murder instruction, was contrary to federal law, as established by the Supreme Court, or constituted an unreasonable application of the facts to that law. Relief is therefore denied.

*C. Lack of Instruction on Murder in the Second Degree by Imminently Dangerous Conduct*

In support of his claim that the trial court erred in refusing to allow an instruction on murder in the second degree by imminently dangerous conduct, Petitioner cites <u>Beck v. Alabama</u>, 447 U.S. 625 (1980) wherein the Supreme Court held that due process is violated by the imposition of the

22

death penalty upon conviction by a state court jury which was not permitted to consider a verdict of guilty on a lesser included offense.  Under Beck, a capital defendant is constitutionally entitled to instructions on offenses that state law recognizes as lesser included offenses of the charged crime, but only when such instructions are supported by the evidence. See Hopper v. Evans, 456 U.S. 605, 610 (1982);  see also Hopkins v. Reeves, 524 U.S. 88 (1998);  Hatch v. Oklahoma, 58 F.3d 1447, 1453-54 (10th Cir.1995).

Under Oklahoma law a person commits second degree murder by imminently dangerous conduct if the homicide is "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without a premeditated design to effect death." Okla. Stat. tit. 21, § 701.8(1). The OCCA has provided a specific definition of "depraved mind" in Palmer v. State, 871 P.2d 429, 431 (Okla. Crim. App. 1994): "A person evinces a depraved mind when he engages in imminently dangerous conduct with contemptuous and reckless disregard of, and in total indifference to, the life and safety of another."  Further, "[a] design to effect death is inferred from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed." Hammon v. State, 898 P. 2d 1287, 1308 (Okla. Crim. App. 1995). The evidence in this case does not support the lack of a premeditated design. Rather, the evidence established that the perpetrators planned the crime weeks in advance. See February 12, 1997,Tr. Trans. at 137. In the early morning hours of February 26, 1995,  the four waited inside the QuikTrip chatting with Mr. Yost and waiting for an opportune time to surround and subdue him. After forcing him into the back cooler of the store they taped his legs with duct tape and handcuffed him. Codefendant Harjo went outside and returned with a baseball bat. Petitioner remained in the cooler with the victim. Yost was then beaten to death with the baseball bat. The evidence establishes that the murder was intentional

23

and premeditated. Although the evidence also indicates that it was one of Petitioner's co-defendants who actually wielded the bat, there is no evidence to indicate that Petitioner was acting other than in a voluntary and intentional manner himself when he participated in attacking the victim and stayed in the back room during and after the murder to be certain no one else entered the room. The evidence does not suggest anything other than a premeditated design to kill the victim, and Petitioner was not entitled to a jury instruction on second degree murder. See Bryson v. Ward, 187 F.3d 1193, 1208 (10th Cir. 1999).  Habeas relief will not be granted on this issue.

## IV.  Jury Selection

Petitioner's Fourth claim attacks the constitutionality of the trial court's *voir dire* process. Petitioner argues his Sixth, Eighth and Fourteenth Amendment rights were violated when six prospective jurors were improperly excused for cause because they held conscientious objections to the death penalty and his trial counsel was not allowed to rehabilitate them. This claim was presented to the OCCA and rejected on its merits. Brown, 989 P.2d at 923. In considering Petitioner's objections to the exclusion of the six veniremen, the OCCA stated:

We have held:

> [N]ot all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Allen v. State, 1994 OK CR 13, 23, 871 P.2d 79, 90-91 (citations omitted). The potential jurors Brown complains were improperly removed clearly stated that they would not consider the death penalty or would automatically vote against the death penalty. Although the trial court's voir dire was not a model of perfection, the jurors were properly removed.

Id. Respondent asserts that the OCCA's decision was not an unreasonable application of clearly established federal law.

24

In Witherspoon v. Illinois, 391 U.S. 510 (1968), the United States Supreme Court held a sentence of death cannot be upheld if the jury that imposed or recommended it was chosen by excluding for cause all veniremen who voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. In Adams v. Texas, 448 U.S. 38, 45 (1980), the Court held that "a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." In Wainwright v. Witt, 469 U.S. 412, 420 (1985), the Court held the Adams standard was the appropriate standard for dealing with issues regarding allegations of improper exclusion of jurors in violation of Witherspoon. Additionally, a trial judge's decision regarding a potential juror's bias is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Davis v. Executive Dir. of Depot of Corr., 100 F.3d 750, 777 (10th Cir. 1996). See also Castro v. Ward, 138 F.3d 810, 824 (10th Cir. 1998); Cannon v. Gibson, 259 F.3d 1253, 1279 (10th Cir. 2001). Since issues of credibility and demeanor are critical to a judge's decision, review of such decisions is "quite deferential." Davis, 100 F.3d at 777; see also United States v. Tipton, 90 F.3d 861, 880 (4th Cir. 1996). "Deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court to make credibility determinations." Miller-El v. Cockrell, 537 U.S. 322, 339 (2003).

This Court finds the six prospective jurors were not improperly questioned and excused. Rather, the Court finds ample support for the trial court's decision that the views of these six potential jurors were so strong that they would not be able to perform their duties as jurors in accordance with the instructions and their oath.  See Wainwright v. Witt, 469 U.S. 412, 433 (1985) (quoting Adams

v. Texas, 448 U.S. 38, 45 (1980)).  Thus, each of the prospective jurors was properly excused for

cause.

### A. Challenge to Prospective Juror Monroe

The first prospective juror excused for cause was Mr. Monroe.  Petitioner argues that Mr.

Monroe was not properly questioned and his trial counsel was denied the opportunity to question Mr.

Monroe about the death penalty.  The relevant part of the trial court's inquiry of Mr. Monroe follows:

THE COURT:        Mr. Monroe, are you opposed to or in favor of the death penalty?

MR. MONROE:       I am opposed to the death penalty.

THE COURT:        All right. Would your opposition to the death penalty prevent
                  or substantially impair your ability to find the defendant guilty
                  if the law and the evidence so warrants, because the death
                  penalty could be imposed?

MR. MONROE:       No.

THE COURT:        All right. If this case should reach the penalty phase, would
                  you automatically vote against the death penalty, regardless of
                  the evidence and the law, that is presented to you while this
                  Court is in session?

MR. MONROE:       Yes, I would, sir.

(Transcript of *Voir Dire* Proceedings, Vol. I I, at 471-72).  Without further questioning, Mr. Monroe

was excused for cause after defense counsel's request to *voir dire* the witness was overruled. Id. at

472.

The proper standard for determining when a prospective juror may be excluded for cause

because of his or her views on capital punishment is the one enunciated in Adams: whether the jurors

views "would prevent or substantially impair the performance of his duties as a juror in accordance

with his instructions and his oath."  Adams, 448 U.S. at 45.  However, "[r]elevant voir dire questions

addressed to this issue need not be framed exclusively in the language of the controlling appellate opinion." Wainwright, 469 U.S. at 433-34.  Upon review, the question is not whether this Court might disagree with the trial court's findings, but whether those findings are fairly supported by the record.  Id. at 434.

A review of the record persuades this Court to find Mr. Monroe was properly excused for cause. The trial judge was face to face with Mr. Monroe and a trial judge's "power of observation often proves the most accurate method of ascertaining the truth." Wainwright, 469 U.S. at 434. Since Petitioner offers no evidence to rebut the factual determination of the trial court regarding Mr. Monroe's bias against the imposition of the death penalty, the Court cannot grant habeas relief for the dismissal of Mr. Monroe.

### B.  Challenge to Prospective Juror Borens

Even though Ms. Borens was questioned more thoroughly than Mr. Monroe, Petitioner believes she was improperly excused for cause.  Petitioner argues that the answers given by Ms. Borens were equivocal toward capital punishment. As summarized by the OCCA:

> Juror Borens first stated that she was opposed to the death penalty but would not automatically vote against it. On further voir dire from the State and the trial court, Borens was asked if she would consider the death penalty.  She stated that she would not consider the death penalty.

Brown, 989 P.2d at 923.

Although the relevant standard is whether the juror's views would cause them to disregard their oaths and the trial court's instructions, this standard "does not require that a juror's bias be proved with unmistakable clarity." Wainwright at 424.  As stated above, relevant *voir dire* questions and answers concerning possible juror bias about capital sentencing "need not be framed exclusively

in the language of the controlling appellate opinion." Id. at 433-34.  In addition to the answers given by Ms. Borens, the trial judge was aided by his assessment of the demeanor of the potential juror. Once again, Petitioner cites no evidence to rebut the presumption of correctness afforded to the trial court's decision that Ms. Borens would not be able to lawfully perform her function as an impartial juror in all phases of the case.  Her excusal for cause did not constitute a violation of Petitioner's constitutional rights.

### C. Challenge to Potential Juror Sicks

Juror Sicks also advised the trial court that she was opposed to the death penalty. (Transcript of Voir Dire Proceedings, Vol. II at 540). Upon further inquiry, Ms. Sicks explained her position as follows:

| | |
|---|---|
| THE COURT: | If this case should reach the penalty phase, would you automatically vote against the death penalty, regardless of the evidence and the law that is presented to you? |
| MS. SICKS: | I would have to vote not in favor of the death penalty. |
| THE COURT: | Okay. You mean to tell me  are you saying by that that you would not consider all three of the penalty options, or you would consider all three of the penalty options? |
| MS. SICKS: | I do not think I could consider the death penalty. |
| THE COURT: | No matter what? |
| MS. SICKS: | It's a big burden to bear, being responsible for somebody else's life. |
| THE COURT: | Yes, ma'am, I understand. Are you telling me that in no circumstances could you impose the death penalty? |
| MS. SICKS: | I'm saying it would be very, very hard. I don't know that I could morally do that. |
| THE COURT: | Okay. I know it would be hard. It would be hard for the other 11 people that are seated in the box with you. |

28

| MS. SICKS: | I understand. |
|---|---|
| THE COURT: | Are you telling me that under no circumstances could you impose the death penalty? If this became  if we came to the sentencing stage you would have three options. Are you telling me you would not consider the third option? |
| MS. SICKS: | I would not consider it. |

Id. at 541-42. Ms. Sicks was subsequently dismissed for cause. Again, this Court defers to the factual determination by the trial judge that Ms. Sicks would not be able to perform her duties as an impartial juror when considering punishment options in the second stage of the trial. The record supports the trial judge's conclusion that Ms. Sicks did not believe in and would not impose the death penalty. Petitioner has not rebutted the trial court's finding by clear and convincing evidence. Accordingly, Petitioner is not entitled to habeas corpus relief regarding the excusal of Ms. Sicks.

### D. Challenge to Potential Jurors Akers, LaPage and Ross

Petitioner also claims that potential jurors Akers, LaPage and Ross were improperly dismissed by the trial judge for cause after limited questioning regarding their views on the death penalty. Each was asked by the trial court if they would automatically vote against the death penalty regardless of the evidence and the law that was presented to them, and each responded that they would. See Transcript of Voir Dire Proceedings, Vol. II, at 584 and 588, and Vol. III at 611. The OCCA found that the manner in which the trial court conducted voir dire was not error and the jurors were properly removed. Brown, 989 P.2d at 923. Additionally, in response to Petitioner's complaint that his trial attorney was not given the opportunity to ask questions of the jurors to rehabilitate them, the OCCA found that the trial court is not required to allow the parties to rehabilitate potential jurors. Id.

This Court agrees with the OCCA and finds that its decision was not contrary to or an

29

unreasonable application of federal law as determined by the Supreme Court. Potential jurors Akers, LaPage and Ross each stated unequivocally that they would vote against the death penalty regardless of the evidence and the law presented. The trial judge observed their demeanor and determined they should be removed from the venire panel for cause. Petitioner offers no evidence to rebut the determination of the trial court that the views of each of these potential jurors would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.  Adams, 448 U.S. at 45.

*E. Conclusion*

Petitioner has failed to rebut the presumption that the trial court was correct in finding that all six jurors views in opposition to the death penalty would have prevented or substantially impaired the performance of their duties as jurors. The OCCA's determination that the trial judge did not commit error in dismissing the six potential jurors because their answers clearly indicated that they would not consider imposing the death penalty regardless of the evidence and instructions was not contrary to or an unreasonable application of federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on his fourth claim of alleged improper jury selection.

**V.      Prosecutorial Misconduct and Gruesome Photographs**

In his fifth proposition of error, Petitioner asserts that prosecutorial misconduct, including improper comments and the introduction of gruesome photographs, deprived Petitioner of his right to a fundamentally fair trial in violation of the Eighth and Fourteenth Amendments. He also claims that his Sixth Amendment rights to an impartial jury were violated by prosecutorial comments made during closing arguments. Respondent maintains that this claim was raised on direct appeal where the OCCA considered the prosecutorial misconduct claims of the Petitioner and determined that

Petitioner was not denied a fair trial or due process. The OCCA found none of the alleged instances of misconduct, either individually or collectively, warranted relief. Brown, 989 P.2d at 933-35. Respondent urges that Petitioner has not met his burden of proof on this issue and is not entitled to habeas relief under § 2254(d).

Sixty-eight instances of alleged prosecutorial misconduct during both stages of trial were presented by Petitioner on direct appeal to the OCCA. The state court found most of the alleged inflammatory comments made by the prosecutor were not objected to and were, therefore, waived except for plain error. The OCCA found no plain error. Brown, 989 P. 2d at 934. Of the remaining comments, counsel's objections were sustained or the jury was admonished, thereby curing any error. Id. The OCCA further held that, with the exception of one photograph of the interior of the victim's skull introduced during second stage proceedings (State's Trial Exhibit # 115), none of the comments, questions or evidence presented by the prosecution constituted misconduct. Id. at 934-35. The error found in the admission of the one photograph was deemed harmless. Id. at 934. The Supreme Court has prescribed rules that govern Petitioner's prosecutorial misconduct claims. Therefore, this Court must determine whether the Court of Criminal Appeals decision on these claims is contrary to such rules. 28 U.S.C. § 2254(d)(1).

Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion). When a prosecutor's comment or argument deprives Petitioner of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair. Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643(1974)). A prosecutor's improper comment or argument which

31

does not deprive a defendant of a specific constitutional right will require the reversal of a state conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process.  Donnelly, 416 U.S. at 643, 645.  See also Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999); Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding.  Donnelly, 416 U.S. at 643.  The complained of remarks or arguments must be considered in the context in which they were made.  Greer v. Miller, 483 U.S. 756, 765-66 (1987); see also Darden v. Wainwright, 477 U.S. 168, 179 (1986).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (citations omitted).  In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments.  Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing Mahorney, 917 F.2d at 472-73).  This Court will apply these principles to Petitioner's individual instances of alleged  prosecutorial misconduct. For the sake of clarity, Petitioner's arguments will be examined at the various stages of trial as set forth below.

### A. Voir Dire

Petitioner contends prosecutorial misconduct during *voir dire* deprived him of a fair trial.

Specifically, Petitioner argues that the prosecution acted improperly during *voir dire* in the following

ways:

> 1. Prosecutor stated to a venireman that the emotions that [he] might have about the death penalty would be appropriate during penalty phase proceedings. Tr. Trans. Feb. 7, 1997, at 360-61.
>
> 2. Prosecutor improperly presented a Trojan horse theory by telling a prospective juror that when you don't have fear of a person or a thing, you let your guard down sometimes, don't you? Id. at 362.
>
> 3. Prosecutor urged selective use of the presumption of innocence by explaining that, the reason for the presumption of innocence is to protect the innocent but not to prevent the guilty from being convicted. Id. at 365.
>
> 4. Prosecutor argued to the jury panel that in some types of first degree murder, rehabilitation is not an issue. Id. at 365.
>
> 5. Prosecutor then emphasized his point by asking, "[W]ould there be some types that are so bad that rehabilitation is not even an issue[?]" Id. at 366.
>
> 6. Prosecutor tried to elicit sympathy for the victim by asking if a potential juror would agree that the victim's life is also important. Id.
>
> 7. Prosecutor argued that the death penalty would bring equilibrium back to society and to the victim's family, for two little boys and a wife to fill the hole that's been created by this murder. Id. at 367.
>
> 8. Prosecutor derogated the States burden of proof by asking a juror about his ability to start off at zero/zero. Id. at 417
>
> 9. Prosecutor tried to elicit an anticipatory verdict based upon an unfair characterization of the evidence. Id. at 453.
>
> 10. Prosecutor incorrectly explained the legal doctrine of accomplice liability, implying that all four defendants had to be treated equally under the law because one was guilty for the acts of another. Id. at 508-09.

Because Petitioner does not argue the prosecutor's statements during *voir dire* violated a specific

constitutional right, this Court will analyze the claims under the fundamental fairness standard of

Donnelly. After a careful review of the totality of the circumstances of the trial, the Court does not

find the statements of the prosecutor so prejudiced the jury against Petitioner as to deny him the

fundamental fairness to which he is entitled under the Constitution. See Brecheen v. Reynolds, 41 F.

3d 1343, 1356 (10th Cir. 1994). The OCCA did not address each individual instance of alleged

prosecutorial misconduct during *voir dire*.  Noting that the Petitioner cited sixty-eight instances of

alleged misconduct, which included comments made by the prosecutor during *voir dire*, the OCCA

found:

> Of the comments made by the prosecutor, most were not met with a
> contemporaneous objection. We have reviewed these comments and
> find that they did not rise to the level of plain error. The trial court
> sustained objections to some of the comments, but no admonition was
> given. We find that any error was cured when the trial court sustained
> the objections. Pennington v. State, 1995 OK CR 79,  35, 913 P.2d
> 1356, 1369.  In other cases, the trial court admonished the jury to
> keep in mind that the arguments and comments of the attorneys were
> not evidence and that they must rely only on their own recollection of
> the evidence. These admonitions cured all but plain error. There was
> no plain error. See Charm v. State, 1996 OK CR 40,  60, 924 P.2d
> 754, 770.

Brown, 989 P.2d at 933-34. Respondent observes that Petitioner has not shown how the OCCA's

decision is contrary to, or an unreasonable application of, federal law as determined by the Supreme

Court. The Court agrees.

Petitioner first complains that the prosecutor improperly stated during *voir dire* that emotions

might be appropriate during second stage proceedings. Petitioner provides no authority for his claim

this statement deprived him of a fair trial. The Court has reviewed the trial transcript and does not find

any support for this contention. Further, the jury was instructed that they "should not let sympathy,

sentiment or prejudice enter into [their] deliberations, but should discharge [their] duties as jurors

impartially, conscientiously, and faithfully under [their] oaths." O.R. Vol. III at 473. The jury is

presumed to follow its instructions. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987)).

Petitioner next challenges the prosecutor's remarks to a potential juror that "you let your guard down" when you know a person.  These remarks, which Petitioner refers to as presenting a "Trojan Horse" theory, did not result in an unfair trial. Evidence was admitted during the trial that the victim was a co-worker of defendant Wilson, and he knew all the defendants. Petitioner has not expanded on his assertion that this remark contributed to an unfair trial, nor has he provided any authority to support his claim of a due process violation as a result of the prosecutor's remarks.

The Petitioner next complains that the prosecutor improperly characterized the presumption of innocence when he said it is "to protect the innocent, but not to prevent the guilty from being convicted." This remark was not sufficiently significant to have affected the jury's verdict and Petitioner provides no legal authority or argument to support his contention that it violated his due process rights.

Petitioner asserts that his constitutional rights were violated when the prosecutor asked a potential juror if he thought there were some types of first degree murder for which rehabilitation might be an issue. Again, Petitioner provides no authority for his contention that the general remarks about rehabilitation resulted in a fundamentally unfair trial. After careful review of the arguments and the record this Court finds nothing to support Petitioner's assertion that these comments resulted in a fundamentally unfair trial.

Petitioner next complains that the prosecutor tried to elicit sympathy for the victim by asking if a person's life who was taken was important. He also asserts that the prosecutor's reference to bringing back equilibrium to the victim's family was an attempt to improperly elicit sympathy for the

victim's wife and two children. As noted above, the jurors were instructed not to let sympathy enter into their deliberations. Petitioner has failed to demonstrate how these *voir dire* comments resulted in a fundamentally unfair trial.

Petitioner next argues that the prosecutor "improperly skewed" the State's burden of proof when he asked during jury *voir dire* whether a potential juror could "start off at zero/zero." <u>See</u> Dkt. #17 at 11 and Tr. Tran. Feb. 7, 1997 at 418. The Respondent argues that the prosecutor was not referring to the burden of proof, but was asking whether the juror could consider the death penalty. Although it is not crystal clear, based upon the prosecutor's questions before and after the "zero/zero" comment, it appears to this Court that the "zero/zero" question pertained to the juror's ability to consider and impose the death penalty.

> QUESTION:     Okay. You stated that you are not opposed or not in favor. Can you explain that to me?
>
> ANSWER:       Well, it would have to – I would have to be convinced pretty thoroughly before I wanted the death penalty.
>
> QUESTION:     Okay. When you say "pretty thoroughly," explain that to me.
>
> ANSWER:       Well, that in my mind it was clear that he really did it.
>
> QUESTION:     Okay. Well, Mr. LaFortune talked a little bit about the basketball game, 51 to 49. Do you remember that?
>
> ANSWER:       Uh-huh.
>
> QUESTION:     Do you understand the State wouldn't want you to give a 20-point lead before we even started the game, would you?
>
> ANSWER:       That's right.
>
> QUESTION:     Okay. Do you think you can start off at zero/zero?
>
> ANSWER:       Yes.

36

| | |
|---|---|
| QUESTION: | That may be hard to do. |
| ANSWER: | Yes, it may be, but I think I can. |
| QUESTION: | Okay. And you're telling me that if you find the law and the evidence warrants you to consider the death penalty, you would consider it? |
| ANSWER: | I would consider it. |
| QUESTION: | And you're telling me that you could impose it? |
| ANSWER: | I believe I could. |

A review of the entire proceedings convinces this Court that the merits of this issue were correctly resolved by the OCCA. The "zero/zero" comment, even if improper, was not significant enough to influence the jury's decision and did not render Petitioner's trial fundamentally unfair. Donnelly, 416 U.S. at 643 (1974); see also Boyd v. Ward, 179 F.3d 904, 920 (1999).

Petitioner also alleges that his due process rights were violated when the prosecutor asked a prospective juror, "If the evidence shows you, both in the first stage and second stage that when the defendant had a man's life in his hands, that he didn't hesitate to take it, would that influence your decision in the second stage?" (Dkt. #12 at 70). He claims the prosecutor was attempting to elicit an anticipatory verdict based upon an unfair characterization of the record. A review of the *voir dire* transcript reveals that Petitioner's attorney objected to this question, the trial judge sustained the objection and ordered the prosecutor to reword the question. Considered in the entire context of the trial, this question did not violate Petitioner's constitutional due process rights.

Petitioner's final objection to the prosecutor's *voir dire* comments arises from the following:

| | |
|---|---|
| PROSECUTOR: | All right. We had spoke [sic] yesterday quite a bit about accomplice liability and acting in concert. If the Judge instructs you that when four persons are acting in concert that they're all equally guilty under the law – |
| PETITIONER'S | |

| | |
|---|---|
| ATTORNEY: | Judge, sorry, Mr. LaFortune. I'm going to object to that. That's not an accurate statement of law, Judge. |
| PROSECUTOR: | Judge, I was trying to approach it as we discussed it yesterday. |
| COURT: | Let him finish, Mr. Smallwood. I'm not sure, I thought he was headed in the right direction. I could be mistaken. I'll overrule it, Mr. LaFortune. Stay within the guidelines that we talked about. |
| PROSECUTOR: | Try to. Thank you, Judge.<br>If the Judge instructs you that four persons acting in concert are equally guilty for the acts of the other, can you follow that law? |
| ANSWER: | Yes. |
| PETITIONER'S ATTORNEY: | Pardon me – |
| COURT: | I'll sustain the objection. |
| PETITIONER'S ATTORNEY: | Thank you, sir. I would ask the jury be admonished to disregard that comment. It's not an accurate statement of the law. |
| COURT: | Ladies and gentlemen, when it comes time for you to know what the law is, when the jury instructions are given to you, this court will give you those jury instructions and that will be the law that you are to follow. Okay? Thank you very much. |

The Respondent contends that any error in the prosecutor's comments was cured by the Court's admonishment to the jury. Petitioner has the burden of establishing that the prosecutor's comments were so prejudicial that he was deprived of the fundamental fairness essential to the concept of due process. Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir. 1989) citing Donnelly, 416 U.S. at 642. Petitioner has failed to do so. The trial judge admonished the jury to disregard the prosecutor's statement and advised them that is was not an accurate statement of the law.  Petitioner has not shown that the OCCA's determination as to the effectiveness of the jury admonishment was unreasonable. This Court agrees with the OCCA's conclusion that the trial court's admonition was sufficient to cure

whatever prejudicial impact the prosecutor's remarks may have had. See Singer v. U.S., 380 U.S. 24, 38 (1965). Further, the jury was adequately instructed regarding accomplice culpability. (O.R. Vol. III at 463-64).

### B. Opening Statement

Two of Petitioner's alleged instances of prosecutorial misconduct occurred during the prosecutor's first stage opening statement. First, the prosecutor stated that the victim had hopes and dreams. Second, the prosecutor again used his Trojan Horse metaphor. Petitioner characterizes both comments as attempts to solicit sympathy for the victim. Even if the statements were error and attempts to invoke sympathy, they simply do not rise to the level required to constitute a violation of Petitioner's due process rights. The OCCA's denial of relief was not unreasonable.

### C. First Stage

Petitioner next argues that the introduction of gruesome photographs during the first stage violated his rights to a fair trial. The OCCA explained its rejection of this argument as follows:

> Brown claims that during the first stage the prosecutor presented evidence which was gruesome. Pictures, State's exhibits 19, 20, and 113, depicted the wounds to the victim and the crime scene. The photographs also aided the medical examiner in his explanation of the wounds to the victim and manner of death. Thus, they were relevant to show the cause of death and the intent of the attacker. The fact that they were gruesome does not make them inadmissible. Their probative value must be substantially outweighed by the danger of unfair prejudice. Willingham, 947 P.2d at 1083. Gruesome photographs are a result of gruesome crimes. McCormick v. State, 1993 OK CR 6, ¶ 10, 845 P.2d 896, 898. We find that they were properly introduced, thus there can be no prosecutorial misconduct for presenting the evidence.

Brown, 989 P.2d at 934. Federal habeas review is not available to correct state law evidentiary errors, but is limited to violations of constitutional rights. Thornburg v. Mullin, 422 F.3d 1113, 1128-29 (10th Cir. 2005) (citing Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999). In Thornburg, the

petitioner also contended that the introduction of gruesome photographs deprived him of a fundamentally fair trial and due process of law. Reviewing the Thornburg record under the constraints of the AEDPA, the Tenth Circuit found that the State bore the burden of convincing the jury that its witnesses and experts provided an accurate account of events. Noting that the photographs, although gruesome, corroborated the accounts of the State's witnesses, the Circuit Court determined that the OCCA had not acted contrary to, or unreasonably applied, federal law in concluding that admission of the photographs was proper. Thornburg, 422 F.3d at 1129.  As in Thornburg, the scenes depicted in the photographs identified as State's exhibits 19, 20 and 113, corroborate the testimony of other witnesses who described the scene, and manner and cause of death of Mr. Yost. The OCCA's decision that the photos were properly admitted into evidence and did not constitute the basis for prosecutorial misconduct was not contrary to, or an unreasonable application of, federal law.

Petitioner also contends that the prosecutor intentionally misstated facts during his first stage examination of the police officer who had interviewed Petitioner after his arrest. The prosecutor asked, "So he told you that two weeks prior they had planned to kill this individual?" (February 12, 1997, Tr. Trans.  at 137).   The trial judge sustained defense counsel's objection to the question and the following occurred:

> PROSECUTOR:   Did you ask him whether or not they had planned prior to doing this?
>
> WITNESS:   Yes, I did.
>
> PROSECUTOR:   And what did he tell you?
>
> WITNESS:   He told me that Billy Alverson and Michael Wilson had planned the robbery two weeks before.

Id. The OCCA determined that any error was cured when the trial court sustained the objection. Brown, 989 P.2d at 933-34. This Court does not find that the prosecutor's initial question, even if

40

improper, was fundamentally unfair. The OCCA's resolution was not unreasonable and Petitioner is not entitled to relief on this claim.

### D. Closing Argument - First Stage

Petitioner asserts that his constitutional rights were violated by certain remarks made by the prosecutor in the first stage closing arguments. Specifically, Petitioner asserts that the prosecutor was again seeking sympathy for the victim and asking the jury to "do justice." These undeveloped assertions by Petitioner do not support his request for habeas relief on this issue.

### E. Second Stage

Petitioner claims three instances of prosecutorial misconduct during the second stage proceedings of his trial. First, Petitioner alleges the jury was numbed by the prosecutor's presentation of more gruesome photographs. The OCCA found that all photographs were "relevant to show the events leading to death which were relevant to prove the aggravating circumstance" except one photograph (State's trial exhibit # 115) showing the interior of Yost's skull. Finding that the exhibit # 155 photo had little relevance to second stage issues and its probative value was substantially outweighed by its prejudicial effect, the OCCA held the admission of the photograph to be error. Further analyzing the impact of the photograph by comparing it to other properly admitted, but gruesome photographs, the OCCA determined the error was harmless.  Without providing legal support for his conclusion, Petitioner challenges the OCCA's decision and states simply, "Under any constitutional standard, the introduction of such evidence unfairly prejudiced the jury to sentence Brown to death." (Dkt. #17 at 13).  This Court agrees with the OCCA and fails to see the relevance of the photograph for second stage purposes. It is a post-autopsy photograph of the interior of the victim's skull. However, the Court also agrees that it is no more shocking or gruesome than the

multiple photographs which were properly admitted showing the crime scene and the damage done to the victim's body by the murder weapon, a baseball bat. Accordingly, upon review of the totality of the circumstances surrounding the admission of the photograph and the substantial amount of properly admitted evidence supporting the aggravating circumstances, this Court does not find that the admission of the photograph in question denied Petitioner the fundamental fairness to which he is entitled under the Constitution. Brecheen, 41 F.3d at 1356.

Petitioner next complains that the prosecutor presented cumulative evidence in the form of diagrams of Yost's injuries and the video of the crime scene. The OCCA's rationale for rejecting this argument on direct appeal was:

> Brown claims that the prosecutor committed misconduct by offering evidence which was cumulative. Brown claims that the introduction of diagrams of Yost's injuries and the video of the crime scene was cumulative to the photographs already admitted. The diagrams of the injuries were relevant to assist the jury in understanding the medical examiner's testimony. The crime scene video gives the jury a walk through perspective of the crime scene. This information was relevant to prove the aggravating circumstances alleged by the State; that the murder was especially heinous, atrocious or cruel and that Brown would commit future acts of violence which would constitute a continuing threat to society. The introduction of these separately did not result in the needless admission of cumulative evidence. Therefore, the prosecutor did not commit misconduct in offering this evidence.

Brown, 989 P.2d at 934-35. Petitioner has not demonstrated, or even attempted to explain, how the OCCA's determination was contrary to or an unreasonable application of federal law as established by the Supreme Court. Habeas relief shall be denied on this issue.

Finally, Petitioner challenges the prosecutor's comments during second stage proceedings when he elicited facts alleging that Brown was part of a gang. After objection to the question asked of one witness referring to Petitioner's involvement "in a gang beating of a pregnant woman"

(February 20, 1997, Tr. Trans. at 28), the trial judge admonished the jury to "remember the evidence as it was presented to them, not as any of the attorneys say that it is." Id.  Petitioner provides no legal authorities or argument to support any claim that this was prosecutorial misconduct so prejudicial as to deprive him of a constitutionally fair trial. Habeas relief is not available on this issue.

*F. Closing Argument - Second Stage*

Petitioner lists several instances of alleged improper comments by the prosecutor during second stage closing argument. First, he asserts that the prosecutor "asked the jury to speculate on what the victim thought when he saw the baseball bat." (Dkt. #12). The transcript reveals that the trial judge sustained defense counsel's objections to the comments and admonished the jury. (February 20, 1997, Tr. Trans. at 68-9). The OCCA did not specifically address this alleged error but ruled that the trial court's admonitions to the jury cured all but plain error. Brown, 989 P.2d at 933-34. The state appellate court found no plain error in any of Petitioner's alleged instances of prosecutorial misconduct. Id. at 934. This Court does not find that the comments made by the prosecutor rendered Petitioner's trial fundamentally unfair.

Petitioner also complains that the prosecutor compared the defendants to animals stalking their prey. The trial judge overruled defense counsel's objection and reminded the jury to "remember the evidence as it was presented to you when the witnesses in this case testified." (February 20, 1997, Tr. Trans. at 74.) The OCCA did not find error. Petitioner does not support his claim with argument or authority. Habeas relief shall be denied on this issue.

Petitioner next asserts that his constitutional rights to a fair trial were violated because the prosecutor played the "race card." At issue is the following;

43

PROSECUTOR:       State's Exhibit Number 52[8] also tells you something, if you listen to it. When Don Bell asked this man, who did you kill, you know what he says? "Just a white dude."

Id. at 75. Defense counsel immediately objected and asked to approach the bench, whereupon he asked for a mistrial alleging the prosecutor deliberately attempted to apply racial prejudice to the jury.  The trial judge overruled the objection and once again admonished the jury to make their decision on the evidence. Id. at 75-6. Without discussion about this particular incident, the OCCA found no plain error in all instances where an objection was raised and the trial judge admonished the jury "to keep in mind that the arguments and comments of the attorneys were not evidence and that they must rely on their own recollection of the evidence." Brown, 989 P.2d at 934.  Respondent observes that the prosecutor's comment was based upon the evidence presented, and notes that the words "Just a white dude" were Mr. Brown's own words during his post-arrest interview with the police. (Dkt. #14 at 51). Petitioner replies that the prosecutor intended to inflame the all white jury with his reference, and that Brown's statement was taken out of context because he was simply giving the police officer questioning him a physical description of the victim. Relying on Turner v. Murray, 476 U.S. 28, 35 (1986) for the proposition that the prosecutor's improper comment "tapped into feelings of racial prejudice" (Dkt. #17 at 15), Petitioner argues that the comment resulted in an unfairly imposed death sentence.

At issue in the Turner case was whether the trial judge's refusal to ask prospective jurors about their racial attitudes deprived Turner of his right to a fair trial.[9]  The Supreme Court noted that, "[I]n addition to petitioner's being accused of a crime against a white victim, the crime charged was a capital offense." Turner, 476 U.S. at 34. Finding "a unique opportunity for racial prejudice to operate

---

[8] State's exhibit # 52 is an audiotape of Brown's statement to police.

[9] As in the case at hand, defendant Turner was black and his victim was white.

44

but remain undetected" the Court held that the trial judge failed to adequately protect petitioner's constitutional right to an impartial jury when he refused to question prospective jurors on racial prejudice. Id. at 35.  Petitioner in the instant case does not claim that he was denied the right to question potential jurors about their possible racial prejudice, but relies on the *dicta* in Turner that racial prejudice may operate in the jury's mind undetected.  To present a federal constitutional question, however, Petitioner must show that the prosecutor's statement rendered the entire sentencing proceeding fundamentally unfair. The statement must be considered in the context of the entire trial. The statement made by the prosecutor was based upon the evidence presented at trial. Brown himself is the one who referred to the victim as a "white dude." Viewing the record as a whole, this Court does not find that the prosecutor's statement rises to the level of a constitutional deprivation of due process.

Petitioner's remaining undeveloped assertions of prosecutorial misconduct during second stage closing arguments are that the prosecutor: (1) directed the jury to focus on the victim's feelings; (2) urged the jury to impose the death penalty based upon a non-statutory aggravating circumstance; (3) improperly commented on Petitioner's right to remain silent by stating that the members of Brown's family had expressed remorse but Brown had not; (4) improperly stressed the deterrent value of imposing the death penalty in Brown's case; and (5) compared Brown's life in prison to the fate of the victim. See Dkt. #12 at 74-5.  Petitioner provides no authority or argument to sustain his burden under the AEDPA to show that the OCCA's denial of relief on these issues resulted in an unreasonable application of federal law as determined by the Supreme Court. Habeas relief is denied on this issue.

## VI.   Heinous, Atrocious or Cruel (HAC) Aggravator

Petitioner contends in his sixth claim for habeas corpus relief that the State introduced insufficient evidence to support the finding that the murder of Mr. Yost was especially heinous,

45

atrocious, or cruel in violation of Petitioner's rights under the Eighth and Fourteenth Amendments. He also asserts that the evidence was insufficient to support the finding that Petitioner substantially participated in the murder under the requirements of Enmund v. Florida, 548 U.S. 782 (1982) and Tison v. Arizona, 481 U.S. 137 (1987). Finally, he maintains that the HAC aggravator, as applied in the State of Oklahoma, is unconstitutional because it does not adequately narrow the class of murderers eligible for the death penalty.

### A. Sufficiency of Evidence for HAC Aggravator

Petitioner's first challenge to the HAC aggravator is an evidentiary one. Specifically, Petitioner asserts that the prosecution failed to present evidence of conscious physical suffering by the victim or extreme mental cruelty as required by Oklahoma law for application of the HAC aggravator. Respondent contends that the evidence supported a finding that Mr. Yost suffered mental torture and endured conscious physical suffering sufficient to satisfy the HAC requirements.

At trial, the jury found the HAC aggravator for the murder of Mr. Yost. See O.R. Vol. III at 432. The OCCA reviewed the evidence on direct appeal and found that the HAC aggravator was supported by the evidence. Denying relief on this issue, the OCCA found ample evidence of both conscious physical suffering and extreme mental torture suffered by Yost:

> All evidence introduced during first stage was incorporated during second stage. Brown stated, in the confession, that Yost didn't say anything once he was hit on the back of the head with the baseball bat, but he was hollering before that. After Yost fell to the ground, Brown said that Yost was breathing real hard and [h]is side was moving up and down. This could be considered evidence of conscious physical suffering in support of the especially heinous, atrocious or cruel aggravating circumstance. However, this was not the only evidence introduced to support this aggravating circumstance.
>
> The medical examiner testified that the first blow by the baseball bat could have rendered him unconscious. However, before the baseball bat

was ever introduced into the attack, Yost was attacked and dragged into the back room by his four assailants. Yost screamed for help while Alverson and Harjo retrieved the bat. Obviously he was being restrained at that time by Brown and Wilson. Yost suffered injuries to his hands, arguably coming from the blow from the bat, indicating defensive wounds. There was a piece of metal from the handcuff imbedded in Yost's head indicating that he had his hands between his head and the bat. In the surveillance tape noises can be heard during the attack after the baseball bat was taken to the cooler where Yost was being held. Once the bat arrived, it is possible that Yost was struck unconscious with one blow. However, we find that before the bat was brought into the attack, Yost had suffered the extreme mental anguish of being held captive, knowing that his ultimate fate rested in the hands of his attackers whom he could identify if left to live.

Brown, 989 P.2d at 930-31. Additionally, in its mandatory sentence review pursuant to Okla. Stat. tit. 21, § 701.13 (c),  the OCCA upheld Brown's death sentence, specifically noting that the aggravating circumstances were supported by sufficient evidence. Id. at 935. Petitioner argues that the OCCA's conclusion was based upon an unreasonable determination of the facts, and he is entitled to relief under 28 U.S.C. § 2254(d)(2).

The appropriate standard of review is the rational factfinder standard established in Jackson v. Virginia, 443 U.S. 307, 319 (1979).   Lewis v. Jeffers, 497 U.S. 764, 781 (1990). The relevant habeas question under the Jackson standard is to ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." Jackson, 443 U.S. at 319; Lewis, 497 U.S. at 783 (considerations also apply to federal habeas review of state court's finding of aggravating circumstances). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The Tenth Circuit has emphasized that, under Jackson, review is "sharply limited" and a court "faced with a record of historical facts that supports conflicting

47

inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)). This Court's review is limited to deciding whether the OCCA's decision that there was sufficient evidence to support a jury's finding of the HAC aggravator was contrary to or an unreasonable application of Jackson. 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive elements of the aggravating circumstance. Under Oklahoma law, the HAC aggravator is properly found when the murder was preceded by torture or serious physical abuse. Medlock v. Ward, 200 F.3d 1314, 1321 (10th Cir. 2000). The instructions given to the jury at Petitioner's trial conformed to Oklahoma law, advising the jury that the phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. See O.R. Vol. V at 751.

The OCCA has determined that the torture element requires proof of either great physical anguish or extreme mental cruelty. Berget v. State, 824 P.2d 364, 373 (Okla. Crim. App. 1991). Torture creating extreme mental distress must be the result of intentional acts by the defendant. Id. Physical abuse requires evidence of conscious, physical suffering. Romano v. Gibson, 239 F.3d 1156, 1176 (10th Cir. 2001); see also Powell v. State, 906 P.2d 765, 779-80 (Okla. Crim App. 1995) (recognizing that it is critical for the State to prove the victim's conscious physical suffering before death); Spears v. State, 900 P.2d 431, 443 (Okla. Crim. App. 1995).

> To prove a murder was especially heinous, atrocious or cruel, the State
> must introduce competent evidence indicating the victim's death was

48

> preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. <u>Perry v. State</u>, 893 P.2d 521, 533-34 (Okl. Cr.1995); <u>Booker v. State</u>, 851 P.2d 544, 548 (Okl. Cr.1993); <u>Battenfield v. State</u>, 816 P.2d 555, 565 (Okl. Cr.1991), cert. denied, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must show the victim endured conscious physical suffering prior to death. <u>Stafford v. State</u>, 832 P.2d 20, 23 (Okl. Cr. 1992).
> . . .
> As we stated in <u>Perry</u>, it is critical the State prove the victim consciously suffered prior to death. <u>Perry</u>, 893 P.2d at 534 Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury.

<u>Powell v. State</u>, 906 P.2d 765, 779 -80 (Okla. Crim. App.1995).

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel aggravator' a mechanical procedure." <u>Robinson v. State</u>, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." <u>Id.</u> While evaluating the particular evidence introduced at Petitioner's trial, the Court must accept the jury's resolution of the evidence as long as it is within the bounds of reason. <u>Grubb v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner argues that there was no evidence to support either limiting factor (torture or serious physical abuse) required in the HAC aggravator. Respondent asserts that the evidence reveals that the victim suffered both extreme mental anguish and serious physical abuse.

The evidence in the instant case, when viewed in the light most favorable to the State, supports

49

a finding that the death of Mr. Yost was preceded by conscious suffering and physical abuse. The medical examiner testified that Mr. Yost died of blunt trauma to the head. (Tr. Trans. February 13, 1997 at 48). The videotape of the incident reveals that a struggle took place between the victim and his attackers. (State's Exhibit # 1).The medical examiner testified that wounds on the victim's hands and fingers were consistent with defensive wounds (Tr. Trans. February 13, 1997 at 37), and wounds on one wrist were consistent with evidence of a struggle while the victim was handcuffed. Id. at 30. Defensive wounds on the victim's hands, fingers and wrist plainly demonstrate that he did not lose consciousness swiftly but was aware of that was happening to him. Additionally, a hinge from the handcuffs was removed from the victim's skull indicating he had placed his hands between the bat and his head in a defensive posture. Further, Mr. Yost was bound prior to his death, evidencing he was conscious during part of the attack. See Romano v. Gibson, 239 F.3d 1156, 1177 (10th Cir. 2001) (bound arms and legs were evidence victim was conscious during part of the attack as there would be no need to bind a dead person). In light of the foregoing, this Court concludes there was sufficient evidence of conscious suffering to fall within Oklahoma's narrowed scope and preserve the application of the heinous, atrocious or cruel aggravating circumstance to this case. See Medlock v. Ward, 200 F.3d 1314, 1322 (10th Cir. 2000). The finding by the jury of the HAC aggravator is rationally supported by the evidence. Jackson v. Virginia, 443 U.S. 307 (1999). Accordingly, the OCCA's decision upholding the jury's finding of the HAC aggravator was not unreasonable. Petitioner is not entitled to habeas corpus relief on this issue.

*B. Sufficiency of evidence of Petitioner's participation in murder*

Petitioner next alleges the sentence of death was improper because the State failed to prove that he himself killed Yost, attempted to kill Yost, or intended the death of Yost. To support his

proposition Petitioner relies on the holdings of the United States Supreme Court in <u>Enmund v. Florida</u>, 458 U.S. 782 (1982) and <u>Tison v. Arizona</u>, 481 U.S. 137 (1986).  The OCCA denied relief on this issue, stating:

> The evidence was clear that Brown substantially participated in the killing. Brown was involved in the initial subduing of Yost. He was present in the back room when the bat was brought in by Harjo. He was present when sounds of the first blow can be heard on the audio/videotape and he remained in the back room until the beating ceased. He had to know that a beating with a baseball bat would cause serious conscious physical suffering and death. Therefore, we find that Brown "was a major participant in the felony committed, who displayed reckless indifference to human life," therefore, he was "sufficiently culpable to receive the death penalty." <u>Allen v. State</u>, 1994 OK CR 30,¶ 15, 874 P.2d 60, 64 (citing <u>Tison</u>, 481 U.S. at 158, 107 S. Ct. at 1688).

<u>Brown</u>, 989 P.2d at 931. Because Tenth Circuit precedent is unclear whether a sufficiency of the evidence claim presents a question of law reviewable under § 2254(d)(1) or a question of fact reviewable under § 2254(d)(2), this Court will consider whether the OCCA's determination was contrary to clearly established federal law or based upon an unreasonable determination of the facts. <u>See</u> <u>e.g.</u> <u>Boltz v. Mullin</u>, 415 F.3d 1215, 1230 (10th Cir. 2005); <u>Turrentine v. Mullin</u>, 390 F.3d 1181, 1197 (10th Cir. 2004).

In <u>Enmund</u>, the defendant was convicted of felony-murder (the unlawful killing occurring during the perpetration of or in the attempted perpetration of robbery).  The sole issue decided by the Court was whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted to take life, nor intended to take life.  <u>Id.</u> at 787. Enmund was the driver of the getaway car for two others who killed an elderly man and his wife. The United States Supreme Court found that the imposition of the death penalty where "the record supported no more than the inference that Enmund was the person in the car by the side of the road at the time of the killings,

waiting to help the robbers escape" was inconsistent with the Eighth and Fourteenth Amendments. Id. Unlike the facts in Enmund, the evidence in Petitioner's trial indicated he helped subdue the victim and helped implement the murder by acting as a lookout while staying in the back room with the victim. Therefore, this Court finds the facts of this case evidencing Petitioner's participation in the murder are clearly distinguishable from Enmund.

Similarly, in Tison, the defendants were convicted of felony-murder. Again, there was no evidence the Tison brothers took any act intended to kill. The issue, therefore, became whether the Eighth Amendment prohibited a death sentence where the defendants' participation, combined with a reckless indifference to human life, was sufficient to satisfy the culpability requirements of Enmund. Unlike Enmund, the defendants' personal involvement, in Tison, was, however, described by the Court as substantial. The Court held that:

> [T]he reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

Tison v. Arizona, 481 U.S. 137, 157 - 158 (1986). As in Tison, Petitioner was, at the least, actively involved in the underlying felony of robbery and was physically present during the entire sequence of criminal activity culminating in the murder of Yost and the subsequent flight by Petitioner and his co-defendants. It is clear to this Court that the Enmund/Tison culpability requirement was satisfied.

After a careful review of the records herein, this Court finds the adjudication of this claim by the Oklahoma Court of Criminal Appeals was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Further, this Court concludes the evidence relied upon by the OCCA was

sufficient to support application of the HAC aggravator to Petitioner. Accordingly, the adjudication of this claim did not involve an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(2). Petitioner is not entitled to relief on this claim.

### C. Constitutionality of HAC Aggravator

Petitioner next challenges the constitutionality of the heinous, atrocious or cruel aggravator found in Okla. Stat. tit. 21, § 701.12(4) as failing to legitimately narrow the class of defendants eligible for the death penalty. Petitioner argues that the HAC aggravator, as applied in Oklahoma, enables all murderers who strike more than one blow to a victim to be automatically eligible for capital punishment. Respondent counters that the heinous, atrocious or cruel definition has been adequately narrowed to comply with constitutional standards, and Petitioner's claim is without merit.

On direct appeal Petitioner questioned the constitutionality of the HAC aggravating circumstance applied in his case. The OCCA denied relief, stating:

> In proposition fourteen Brown claims that the especially heinous, atrocious or cruel aggravator does not perform the constitutionally required narrowing process. The heinous, atrocious or cruel aggravator has been analyzed thoroughly and, when properly limited by the conditions precedent of torture or serious physical abuse, found to be consistent with the mandates of the Eighth and Fourteenth Amendments. Toles v. State, 1997 OK CR 45, 60, 947 P.2d 180, 192. We decline the invitation to deviate from our previous holdings.

Brown, 989 P.2d at 931 (Okla. Crim. App. 1999).

Because the constitutionality of aggravating factors is a question of law, Petitioner must demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. See United States v. McCullah, 76 F.3d 1087, 1107 (10th Cir. 1996) and 28 U.S.C. § 2254(d)(1). Petitioner has failed to meet this burden.

The Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous, atrocious or cruel aggravator in <u>Workman v. Mullin</u>, 342 F.3d 1100, 1115-16 (10th Cir. 2003), stating:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, <u>see</u>, <u>e.g.</u>, <u>Romano v. Gibson</u>, 239 F.3d 1156, 1176 (10th Cir. 2001); <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1226 (10th Cir. 2000);  <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000); <u>Moore v. Gibson</u>, 195 F.3d 1152, 1175-76 (10th Cir. 1999); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1274 (10th Cir. 1999); <u>Hooks v. Ward</u>, 184 F.3d 1206, 1239-40 (10th Cir. 1999); <u>Foster v. Ward</u>, 182 F.3d 1177, 1194 (10th Cir. 1999); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from <u>Thomas</u> expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in <u>Medlock</u>. <u>See generally Thomas</u>, 218 F.3d at 1229 n. 17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); <u>Medlock</u>, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating circumstance] would not have the discretion- limiting effect required by [the Eighth Amendment].") (Lucero, J., concurring).
>
> Oklahoma, however, has limited application of the aggravating circumstance to only those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. <u>Stouffer v. State</u>, 742 P.2d 562, 563 (Okla. Crim. App. 1987). This limitation was included in the jury instructions in Workman's case. ROA Criminal Appeal, Original Record at 98, Instruction No. 3  penalty phase ("The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."). We have specifically found Oklahoma's new formulation to be constitutional since this limiting language was enacted. <u>Hatch v. State</u>, 58 F.3d 1447, 1468-69 (10th Cir. 1995); <u>see also Duvall</u>, 139 F.3d at 793.

<u>Workman</u>, 342 F.3d at 1115-16. Tenth Circuit precedent forecloses Petitioner's argument that Oklahoma's heinous, atrocious or cruel aggravator is unconstitutionally vague. Habeas relief is denied on this issue.

## VII.   Continuing Threat Aggravator

Petitioner asserts in his seventh claim that the continuing threat aggravating circumstance is unconstitutional, and application of the aggravator in his case violated the Eighth and Fourteenth Amendments.

### A. Constitutionality of Continuing Threat Aggravator

As acknowledged by Petitioner, Tenth Circuit precedent forecloses Petitioner's facial challenge to Oklahoma's continuing threat aggravator as unconstitutional. <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1232 (10th Cir. 2002); <u>see also</u> <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000). This claim is without merit.

### B. Sufficiency of Evidence for Continuing Threat Aggravator

Petitioner also asserts there was insufficient evidence to support the jury's finding that there was a probability he would commit future criminal acts of violence as required for the continuing threat aggravator under Oklahoma law.  <u>See</u> Okla. Stat. tit. 21, § 701.12(7);  <u>Medlock v. State</u>, 887 P.2d 1333, 1346 n.30 (Okla. Crim. App. 1994). Respondent incorrectly contends that the issue was not raised on direct appeal, and is unexhausted but should be denied on its merits. (Dkt. #14 at 63). Petitioner raised this issue on direct appeal (<u>see</u> Brief of Appellant filed May 21, 1998 at 91-93). Citing specific evidence presented by the State during the trial as sufficient, the OCCA denied relief on the merits finding "the evidence was sufficient from which the jury could find the possibility that Brown would commit future acts of violence which would constitute a continuing threat to society."

Brown, 989 P.2d at 932.

Under Oklahoma law the continuing threat aggravator may be proved by prior convictions, unadjudicated crimes, or circumstances of the crime for which defendant is on trial. Rogers v. State, 890 P.2d 959, 976-77 (Okla. Crim App. 1995); Mitchell v. State, 884 P.2d 1186, 1208 (Okla. Crim. App 1994). As support for the aggravating circumstance of "continuing threat to society" the State presented evidence at trial of Petitioner's participation in a beating on September 25, 1983, (February 18, 1997 Tr. Trans. of Second Stage proceedings before Brown jury only, at 60-61), and of three prior instances when he was in illegal possession of a firearm. Id.  Petitioner does not argue that the OCCA's determination of the facts supporting their conclusion is unreasonable. Therefore, this Court presumes them to be correct. 28 U.S.C. § 2254(e)(1). He argues that these offenses were unadjudicated and do not provide constitutionally sufficient evidence to support the continuing threat aggravator. The United States Constitution does not, however, preclude a capital sentencer from considering unadjudicated bad acts.  Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002).

Again, the controlling standard is whether any rational trier of fact could have found the aggravator beyond a reasonable doubt and, under AEDPA, we ask only "whether the OCCA's decision was reasonable." McCracken v. Gibson, 268 F.3d 970, 981 (10th Cir. 2001). After reviewing the evidence in the light most favorable to the State, this Court finds that any rational trier of fact could have found the continuing threat to society aggravating circumstance existed beyond a reasonable doubt. Jackson, 443 U.S. at 319. Therefore, the OCCA did not act contrary to Jackson or any other clearly established federal law in upholding the jury's finding of this aggravating circumstance.  The state appellate court's determination that there was sufficient evidence to support this aggravating fact was not unreasonable under either 28 U.S.C. § 2254(d)(1) or (2). Habeas relief is denied on this claim.

56

## VIII. Victim Impact Evidence

Petitioner next claims that his rights guaranteed by the Eighth and Fourteenth Amendments were violated by victim impact evidence introduced during the penalty phase of his trial. He first argues that the victim impact statements presented by the victim's wife and mother were unfairly prejudicial. He also claims that victim impact evidence in the Oklahoma sentencing scheme acts as an improper "super aggravator" and is unconstitutional. The OCCA denied these claims of error on direct appeal. Brown, 989 P.2d at 932-33.

### A. Statements by Yost's wife and mother

Toward the end of the State's case in the second stage proceedings, the victim's wife, Angela Yost, and his mother, Alma Dorn, each read their prepared victim impact statements into the record. See Tr. Trans., February 18, 1997, at 164-71. Petitioner asserts that the statements were unfairly prejudicial and exceeded the limitations established in Cargle v. State, 909 P.2d 806 (Okla. Crim App. 1995) and Payne v. Tennessee, 501 U.S. 808 (1991).

Mrs. Yost read a short statement in which she described how her life had changed since her husband's murder, how she had enjoyed cooking and ironing for her husband and how much he enjoyed celebrating birthdays and holidays because he had not been able to do so during his childhood. In support of his claim that Mrs. Yost's testimony was "hyper prejudicial," Petitioner draws the Court's attention to the following proceedings had at the bench following her statement:

MR. SMALLWOOD:      Judge, we had a member of the Victim Witness Center crying in the courtroom. This is absolutely unacceptable, Judge. If she can't get a hold of herself, she doesn't need to be in here. She's not a party to this. I don't know who it is.

THE COURT:      Mr. LaFortune, why don't you ask the member of the Victim Witness Center who's crying to excuse herself.

MR. SMALLWOOD:          I didn't hear it, but I saw it, Judge.

THE COURT:          Okay. Go ask her to leave. Call your next witness.

Tr. Trans., February 18, 1997, at 168-69.

Petitioner also complains that the references in Ms. Dorn's statement to her son's childhood and his future plans to take care of her in her old age were unduly prejudicial. The OCCA found the statements of both Mrs. Yost and Ms. Dorn were relevant to show the impact of the murder on their lives, with the exception of the references to his childhood. Noting that statements "about a victim's childhood have no relevance in victim impact evidence," the OCCA found such references constituted error but did not rise to the level of plain error. Brown, 989 P.2d at 933.

Petitioner has failed to demonstrate how the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Federal habeas corpus review of the admission of victim impact evidence is limited to a determination whether the use of the victim statement made the sentencing hearing "so fundamentally unfair as to deny him due process." Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974); accord, Payne, 501 U.S. at 825. In reviewing the victim impact statements made by Angela Yost and Alma Dorn, this Court does not find the remarks so infected the sentencing proceeding as to render it fundamentally unfair. Accordingly, habeas relief is denied on this issue.

### B. Constitutionality of victim impact evidence as applied in Oklahoma

Petitioner next asserts that victim impact evidence in Oklahoma is not relevant to Oklahoma's "death penalty scheme" which requires a balancing test of aggravating and mitigating circumstances. (Dkt. #12 at 104). He claims it operates as a non-statutory "super aggravator" resulting in an unconstitutional skewing of the weighing process between aggravating and mitigating circumstances.

58

Id. This claim was raised on direct appeal. In rejecting Petitioner's arguments, the OCCA stated:

> Brown finally complains that the victim impact evidence in this case served as nothing more than a "superaggravator." We have previously held that victim impact evidence is very different and serves a different purpose than aggravation evidence. Willingham, 947 P.2d at 1086. The State is still required to prove at least one aggravator beyond a reasonable doubt before the death penalty may be imposed. Id.

> In this case, the jury was specifically instructed that they could only consider the aggravating circumstances set forth in the instructions. Brown has not convince us that the jury would not have found the aggravating circumstance but for the victim impact evidence. Id.

Brown, 989 P.2d at 933.

If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no *per se* bar. "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne v. Tennessee, 501, U.S. 808, 827 (1991). In overruling its own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v. Gathers, 490 U.S. 805 (1989), the Supreme Court observed that, "assessment of the harm caused by the defendant has long been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm." Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate purposes," the Payne Court concluded that such statements are "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by the sentencing authorities." Id. at 825.

In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit.

21, § 701.10 (c) (1992)[10] and Okla. Stat tit. 22, §§ 984, 984.1 (1992).[11] Petitioner does not challenge

the constitutionality of the Oklahoma statutes or the admission of victim impact statements *per se*, but

asserts that the statements have no place in Oklahoma's balancing scheme and can be considered by

the jury "as it sees fit on an arbitrary basis." (Dkt. #12 at 107).  Petitioner's concern about the jury's

possible misuse of victim impact evidence in its deliberations is based upon mere speculation.

Petitioner's jury was fully instructed as to its duties for determining punishment in the second

stage proceedings. (O.R. Vol. III at 478-96). In arriving at a determination of punishment the jury was

instructed to first determine whether any one or more of the three aggravating circumstances existed

beyond a reasonable doubt. (Instruction No. 5, O.R. Vol. III at 484). Jurors were advised they could

"consider only those aggravating circumstances set forth in these instructions." (Instruction No. 9, O.R.

Vol. III at 488). Only after unanimously finding that one or more of the aggravating circumstances

existed beyond a reasonable doubt could the jury even consider imposing a death sentence. Id. The jury

is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson

v. Marsh, 481 U.S. 200 (1987)). Petitioner's assumption that his jury considered the victim impact

evidence to be another aggravating circumstance ignores the plain language of the instructions given

at trial, which the jury is presumed to follow. Petitioner's jury found the existence of all three

---

[10] Section 701.10 © of Title 21 provides, "In the sentencing proceeding, . . .the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

[11] Section 984 of Title 22 in effect at the time of Petitioner's crime and trial defines "victim impact statements" as, " information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Per Section 984.1, copies of the victim impact statement are to be made available to the parties.

aggravating circumstances beyond a reasonable doubt before recommending the death sentence for Petitioner.

Additionally, the Supreme Court has determined that aggravating circumstances give effect to constitutional protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. <u>Tuilaepa v. California</u>, 512 U.S. 967, 979-80 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." <u>Id.</u> (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." <u>Id.</u> at 979. This Court finds that the use of victim impact evidence in general under Oklahoma law and specifically in Petitioner's trial did not deprive Petitioner of his Eighth Amendment or Fourteenth Amendment rights. The OCCA's decision on this issue in Brown's direct appeal was not an unreasonable application of clearly established federal law as determined by the Supreme Court. Habeas relief is denied on this issue.

## IX.    Application of Avoid Arrest Aggravator

In Claim IX, Petitioner asserts his constitutional rights were violated because the prosecution submitted insufficient evidence to prove the murder was committed for the purpose of avoiding or preventing a lawful arrest, one of three aggravators found by the jury to exist in this case.  Specifically, Petitioner argues that the "avoid arrest" aggravating circumstance was applied in an unconstitutional manner because it was not supported by a predicate crime apart from the murder itself for which Brown sought to avoid arrest or prosecution. Petitioner's jury found him guilty of both murder in the first degree and robbery with a dangerous weapon. (O.R. Vol. III, at 426-27). Unable to determine from the

verdict form whether the murder conviction was based upon malice murder or felony murder, the OCCA interpreted the verdict as one of felony murder and ordered that his conviction for robbery with a dangerous weapon be dismissed. Brown, 989 P.2d at 930, 935. Petitioner argues that the dismissal of the felony robbery conviction invalidates the "avoid arrest" aggravator because that aggravator must be supported by an underlying predicate crime which is separate from the crime of murder. Thus, Petitioner asserts the avoid arrest aggravator was applied in an unconstitutional manner in his case.

This issue was not raised on direct appeal, but was raised as "Proposition III" in Petitioner's post conviction proceedings. (Post Conviction Application, filed June 1, 1999, in Case Number PC-98-1251, In the Court of Criminal Appeals for the State of Oklahoma, at pages 23-30). The OCCA found that the issue was waived as it had not been raised on direct appeal and Brown had not shown that the facts or law supporting this claim were unavailable to direct appeal counsel. (Unpublished Opinion Denying Relief filed November 8, 1999, in Case No. PC-98-1251). The state appellate court also rejected Petitioner's argument that the failure of his appellate counsel to raise the issue on direct appeal constituted ineffective assistance of counsel. Id.  In these habeas proceedings Respondent asserts that this claim is procedurally barred. For the reasons stated below, this Court finds that Petitioner is procedurally barred from habeas review of this issue.

In addressing the procedural bar question the first consideration for this Court is to determine whether the state appellate court's decision was founded on an independent and adequate state procedural rule.  "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes v. Thomas, 46 F.3d 979, 985 (10th Cir.).  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases."  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The procedural bar, as applied

to Petitioner's claim, was an "adequate" state ground because the OCCA consistently declines to review claims which could have been but were not raised on direct appeal.  Okla. Stat. tit. 22, § 1086. The Court also finds that the bar imposed by the OCCA was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.  Applying the principles of procedural default to this case, the Court concludes that Petitioner's claim in proposition IX is procedurally barred.

As a result of the procedural bar, this Court may not consider the merits of Petitioner's claim related to the unconstitutional application of the "avoid arrest" aggravator unless Petitioner is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Demarest v. Price, 130 F.3d 922, 941042 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. Schlup v. Delo, 513 U.S. 298 (1995); McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner attempts to demonstrate "cause and prejudice" via two arguments. First, he claims the law supporting his claim was unavailable to direct appeal counsel because "the underpinnings" of his claim rely in part on a case decided by the OCCA after Petitioner's direct appeal.  Relying now on the state appellate court's finding in Alverson v. State, 983 P.2d 498 (Okla. Crim. App. 1999)  that

malice murder and felony murder are simply different means of committing the same offense, Petitioner argues that the OCCA's interpretation of state law invalidates the "avoid arrest" aggravator in Petitioner's case. This Court fails to see how the <u>Alverson</u> language invalidates the "avoid arrest" aggravator and notes, in fact, that the <u>Alverson</u> decision specifically declares that, "Our misguided decision to dismiss the underlying felony convictions in those cases [referencing the direct appeal decisions in the cases of Petitioner's co-defendant Harjo and of Corey Duane Hamilton] gave the defendants undue benefit to which they were not entitled." <u>Id.</u> at 521, n.109.  In Hamilton's trial, as in Petitioner's case, the jury's verdict did not specify whether Hamilton was found guilty of malice-aforethought murder or kidnapping murder or armed-robbery murder. Thus, the OCCA interpreted the verdict as one of felony murder and reversed Hamilton's conviction for Robbery with a Firearm. <u>Hamilton v. State</u>, 937 P.2d 1001, 1009 (Okla. Crim. App. 1997).  Petitioner has not established cause through his argument of "new law" based upon the <u>Alverson</u> case.

Petitioner next asserts that his appellate attorney rendered ineffective assistance of counsel in failing to raise the defaulted claim related to the "avoid arrest" aggravator on direct appeal, constituting cause for his procedural default. (Dkt. #17 at 19). Ineffective assistance of appellate counsel may constitute cause for state procedural default where counsel's performance falls below the minimum standard established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488-489 (1986).  However, the assistance provided by appellate counsel must rise to the level of a constitutional violation. As noted by the Tenth Circuit, "A claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although it is difficult to show deficient performance under those circumstances because counsel 'need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of

success on appeal.'" Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing Smith v. Robbins, 528 U.S. 259, 285 (2000)).  Furthermore, before ineffective assistance of appellate counsel can be considered "cause" to excuse the procedural default of a constitutional claim, the ineffective assistance of counsel claim itself must have been fairly presented to the state court as an independent claim. Murray, 477 U.S. at 489; Edwards v. Carpenter, 529 U.S. 446 (2000).

In the instant case, Petitioner raised the issue of ineffective assistance of appellate counsel in his post-conviction proceedings. The OCCA, applying its three-tiered analysis set forth in Walker v. State, 933 P.2d 327 (Okla. Crim App. 1997), *overruling by statute recognized in* Davis v. State, 123 P.3d 243, 245 (Okla. Crim. App. 2005) (citing to Okl. Stat. tit. 22, § 1089(D)(4) (2004)), rejected this claim as part of Petitioner's post-conviction appeal, finding that Petitioner had failed to carry his burden of establishing ineffective assistance by his appellate counsel. Because the OCCA's analysis of the ineffective assistance of appellate counsel claim deviated from the controlling federal standard of Strickland, it is not entitled to deference. Cargle v. Mullin, 317 F.3d 1196, 1205 (10th Cir. 2003).

In evaluating Petitioner's claim of ineffective assistance of appellate counsel as raised in the instant action, this Court shall apply the Strickland two-pronged standard used for claims of ineffective assistance of trial counsel.  See United States v. Cook, 45 F.3d 388, 392 (10th Cir.1995).  The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion,

148 F.3d 1219, 1221 (10th Cir.1998) (citing Cook, 45 F.3d at 392-93). If the issue has merit, the Court then must determine whether appellate counsel's failure to raise the claim on direct appeal was deficient and prejudicial.  Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394.

In this case, after a careful review of the record in light of Petitioner's allegation of ineffective assistance of appellate counsel, this Court finds no basis for granting relief under §2254(d). Appellate counsel's performance, even if deemed deficient, was not prejudicial to Petitioner under the Strickland standard. To establish the prejudice prong of the test, Petitioner must show that the allegedly deficient performance prejudiced the defense; namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.  Petitioner has the burden of demonstrating prejudice. Id. at 696.  Failure to establish either prong of the Strickland standard will result in denial of relief. Id.; Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir.1995).

Petitioner relies upon a conclusory statement that his appellate counsel was ineffective without supporting facts, authorities or arguments about his appellate counsel's ineffectiveness. Petitioner seems to assume that if his counsel had raised the issue of the alleged unconstitutional application of the "avoid arrest" aggravator on direct appeal that the results of the proceedings would have been different. The record does not support this assumption.  Brown's jury found the existence of three aggravators before recommending the death penalty as punishment for Brown's participation in Yost's murder.  Even if the OCCA had determined that the "avoid arrest" aggravator was invalid after it dismissed Brown's conviction for robbery with a dangerous weapon, Petitioner has not demonstrated that the OCCA would have reversed the death sentence.  The invalidity of one of multiple aggravating circumstances does not automatically render a death sentence unconstitutional. See Brown v. Sanders,

-- U.S. --, 126 S.Ct. 884 (2006). Petitioner has not shown that his appellate counsel's failure to raise the issue of an unconstitutional application of the avoid arrest aggravator would have rendered a different result in the sentencing proceedings. Thus, Petitioner has not shown prejudice caused by his counsel's omission, and his ineffective assistance of appellate counsel claim fails under the <u>Strickland</u> standard. Having failed to establish ineffective assistance of counsel as cause for his procedural default, Petitioner is not entitled to the "cause and prejudice"exception from the procedural bar. Accordingly, this proposition is procedurally barred from consideration by the Court unless the "fundamental miscarriage of justice" exception is applicable.

The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. at 495-96 (1986). Petitioner has not set forth a fundamental miscarriage of justice argument to excuse his procedural default. Accordingly, the Court concludes that Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Having failed to demonstrate cause and prejudice or that a fundamental miscarriage of justice will result if this Court does not consider his claim, Petitioner's claim on this proposition is procedurally barred, and habeas corpus relief requested in ground IX shall be denied on that basis.

**X.    Cumulative Error**

Finally, Petitioner argues that the accumulation of all trial errors deprived him of his rights to due process and fundamental fairness, entitling him to relief. The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. <u>Workman v. Mullin</u>, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors

is not part of the analysis. <u>Le v. Mullin</u>, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing <u>U.S. v. Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having rejected each of Petitioner's claims, the Court finds no basis for a cumulative error analysis. Petitioner is not entitled to relief on this ground.

## XI.    Evidentiary Hearing

In his request for relief (Dkt. #12 at 124) Petitioner asks for an evidentiary hearing "as to any issues which involve facts not apparent from the existing record" and "to any issues which involve facts disputed by the State." <u>Id.</u> As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently before the Court, this Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. <u>Michael Williams v. Taylor</u>, 529 U.S. 420 (2000). Accordingly, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

After a complete review of the transcripts, trial record, appellate record, briefs filed by the Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (Dkt. #12) to be without merit. Accordingly, habeas relief on all grounds is denied.

**ACCORDINGLY IT IS HEREBY ORDERED THAT**:

1.      Marty Sirmons is substituted for Gary Gibson as the party Respondent and the Court

Clerk is directed to note such substitution on the record.

2.      Petitioner's request for habeas relief (Dkt. #12) is denied.

**IT IS SO ORDERED.**

This 13th day of February, 2006.

**Terence Kern**
**United States District Judge**